PEOPLE v. BLAKE.

1. CRIMINAL LAW—ARREST WITHOUT WARRANT—EVIDENCE.
    In a prosecution for shooting and killing an officer who attempted to arrest the respondent without a warrant, evidence of the crime for which the arrest was made and of conversations between the officer and third persons was admissible, as it tended to show the commission of the crime and reasonable grounds for believing that respondent had committed it.

2. TRIAL—REOPENING CASE.
    It is within the reasonable discretion vested in the trial court to reopen a criminal case during the argument and admit in evidence exhibits which had been used and referred to in the testimony; sufficient opportunity being given to the respondent to make objections and introduce further testimony in rebuttal.

3. CRIMINAL LAW—INDETERMINATE SENTENCE.
    On a conviction for murder in the second degree, a sentence for life may be imposed without fixing a maximum and minimum term. 3 Comp. Laws, § 11471; Act No. 184, Pub. Acts 1905.

Error to Jackson; Parkinson, J. Submitted June 17, 1909. (Docket No. 125.) Decided July 6, 1909.

John Blake was convicted of murder in the second degree, and sentenced to imprisonment for life in the branch of the State prison at Marquette. Affirmed.

*Forrest C. Badgley* and *John E. Shekell,* for appellant.

*A. O. Reece,* Prosecuting Attorney, for the people.

BROOKE, J. In May, 1906, the defendant was tried upon the charge of murder, and was by the jury convicted of murder in the second degree. He was thereupon sentenced to life imprisonment in the Marquette prison.

It appears that upon the night of March 18, or the early morning of March 19, 1906, the post office in the village of Brooklyn, located about 16 miles south of Jackson, had been broken open and a burglary committed. On the morning of the 19th E. H. Parish, then sheriff of Jackson county, received news of the Brooklyn burglary, and at about the same hour Sergeant Booth, a police officer of the city of Jackson, likewise heard of the burglary, and further received information that three men had been seen driving north from Brooklyn toward Jackson. A little later Booth called up Parish by telephone, and stated that three suspicious looking men had been seen at Farrell's or Merriman's saloon, whom he thought likely were the parties they wanted. He further asked Parish to hitch up his horses to a double carriage and drive him (Booth) and another police officer by the name of McInerney out to the saloon in question. This was done by Parish. On the way out to Merriman's saloon Sergeant Booth told Parish and the other officer that there was no question in his mind from what he had heard that the three men were the parties wanted. Upon arriving at Farrell's, the horses were turned over to a Mr. Acton, and the officers alighted. On inquiry they were told that the three men were at breakfast at a nearby boarding house. In a short time the three men, Blake, the defendant, Hamilton, and Walpole, came out on the porch of the boarding house,

and, after standing there for perhaps a minute, started to walk rapidly away. The three officers went after them, and, when they came very near, Sergeant Booth said, "We are officers, and want you," at the same time passing Hamilton and Walpole and grappling with Blake, the defendant, by the shoulder. McInerney grappled with Hamilton, and Parish with Walpole. Almost immediately the respondent, Blake, jerked away from Booth, drew a revolver and fired, the shot taking effect in Booth's head, and causing instant death. After the shooting of Booth by Blake, Hamilton drew a revolver on McInerney, and succeeded in making his escape together with Blake. They were captured late in the afternoon of the same day in a barn about three miles west of Jackson. All three men were heavily armed, having also upon their person dynamite caps, fuse, and nitroglycerine, and had, further, the property stolen from the Brooklyn post office.

The respondent urges five separate grounds for reversal, as follows:

"(1) It is the contention of the respondent that the court erred in admitting testimony as to all that occurred at the village of Brooklyn.

"(2) The court erred in permitting the people to show the conversations which occurred between Booth and various witnesses not in the presence of the respondent.

"(3) The court erred in opening the case after the proofs had been closed by both parties, and while the prosecuting attorney was making his argument, and in putting into the record, at that time, on his own motion, without the request of the prosecuting attorney, or his assistant, a very large number of exhibits which had been identified in the course of the trial, but had not been offered in evidence.

"(4) The court erred in his remarks made to counsel for respondent after the proofs had been closed and at the time the case was opened by the court on its own motion and the exhibits put in evidence.

"(5) The court erred in not fixing the maximum and minimum sentence."

The first and second objections will be considered

together.   The record discloses that the prosecution went
very fully into the evidence concerning the burglary on
the night prior to the murder.   It will be borne in mind
that Sergeant Booth, in his capacity as a peace officer, was
in the act of making the arrest of the respondent without
a warrant.   It was therefore incumbent upon the prose-
cution to show, *first*, that information that a felony had
been committed had reached Booth; and, *secondly*, that
he had reasonable grounds for believing that Blake and
his companions were the men who had committed that
felony.   It is true that the prosecution might have con-
tented itself with merely showing the fact that a felony
had been committed, that information of its commission
had reached Booth, and that Booth had reasonable
grounds for believing Blake to be one of its perpetra-
tors, in order to have justified Booth in attempting to
make the arrest without a warrant.   In going into the
details of the burglary at Brooklyn, however, we fail to
see how the respondent was in any wise prejudiced.
Touching this matter, and in passing upon the objection
of respondent's counsel, the learned circuit judge said:

" The jury ought to understand the purpose, and per-
haps I ought to state specifically to the jury that this man
is not on trial for blowing a safe, or breaking and enter-
ing an office, or committing burglary.   The evidence is
permitted simply to show what had been done as bearing
upon the right of Mr. Booth to attempt the arrest.   I ad-
mit it for the purpose of showing a crime had been commit-
ted which would justify arrest without a warrant, pro-
vided Mr. Booth had such information of it as would lead
an officer reasonably, with good reason and properly alert,
to attempt to do what he did do."

We think, upon the ground stated, the testimony was
admissible.   See *People* v. *Wilson*, 55 Mich. 506, 515 (21
N. W. 905).   See, also, *Firestone* v. *Rice*, 71 Mich. 387
(38 N. W. 885, 15 Am. St. Rep. 266).

After the proofs were closed and counsel for the people
was addressing the jury, reference was made by him to
an exhibit, whereupon respondent's counsel objected to

such reference upon the ground that the exhibit had not been introduced. The court said:

"Now, gentlemen, those things were here. They were displayed in the presence of the jury, were talked about and testimony given in reference to them and cross-examined upon. The testimony wouldn't be intelligible without it referred to them. It may be that the prosecuting attorney omitted in reference to some of them or all of them to formally put them in evidence, and, if he did, I will permit him now to put them in evidence.

"*Mr. Shekell:* Wait a minute. Let's see whether the court ought to do that.

"*Mr. Badgley:* We should have offered testimony—

"*The Court:* Very well, we will open the case, and you may offer the testimony now.

"*Mr. Shekell:* Perhaps our testimony isn't available.

"*The Court:* Isn't available? You may get the testimony that isn't available. Will it be available tomorrow morning?

"*Mr. Shekell:* I submit this defendant, on trial in a criminal case, has some rights that should be observed. If I read the Constitution correctly, those things are guaranteed to him; and that is, the people must make out their case. We rested our case after they rested theirs. We rest our case upon the proof they had introduced. Now, we are not to blame because they didn't put in their evidence. It was no part of our duty. Now, they come into this court, and the court is going to permit them in the course of the argument to introduce testimony they should have put in. I want to say this much—if the court thinks it is right, but no knowing where it may lead us. We may have consideredit, and we may not have considered it. We rested our case on the testimony as they rested. [Continuing]: We object—and shall be content with the ruling of the court—we object at this time to the court opening this case and permitting the prosecution to put in any of that testimony, because it will be unfair to this defendant, and to the statement of the court he will permit them to do it. The prosecution hasn't asked for it—at this time, as being unfair to the defendant and not giving him the trial that should be given him by law.

"*The Court:* Now, gentlemen, the objection I regard as one of the most technical character. The stuff pro-

duced here was here on several days. It was handled. It was handled by the various witnesses and talked about, and testimony had with reference to it. And I think it is practically in evidence.

" *Mr. Shekell:* Supposing they had offered it in evidence and we had objected to it, we would have had a right to be heard at that time.

" *The Court:* Certainly. Counsel well says, if it had been formally offered, they would have had a right to object, and I now permit the prosecutor to formally offer, and I will listen to the objections, and I will stop this trial and allow any evidence to be put in that has not been put in or would have been put in had the exhibits been offered at the proper time. If necessary, I will suspend the trial of this case for such time as may be necessary to get just such evidence as counsel for defendant would have got. I consider them, in fact, for all practical purposes, actually in the case.

" *Mr. Shekell:* Some of these statements I believe your honor makes hastily. I don't think, for all purposes, until the prosecution has introduced them, they are in evidence. I understand we have a right to object to them and keep them out.

" *The Court:* I understand your object.

" *Mr. Shekell:* Does the court say because the plaintiff or people brings things into the court room, and doesn't offer them in evidence, that they are in evidence and the defendant has waived his right to object to them ?

" *The Court:* They have been talked about and shown to the jury. We will not argue any further, and I will suspend this trial for the rest of the day, until tomorrow morning, if you need the time in order to get witnesses because these exhibits are offered.

" *Mr. Badgley:* I think, before they get them in, they need a couple of days to get them around in shape to put them in. There haven't any of them been marked, and nobody can tell which witness identified that thing and which witness identified that.

" *The Court:* We won't argue it any further, gentlemen. You may suspend your argument.

" *Mr. Shekell:* I would like to put another objection on the record. I object to their going in as one entire lot, because there is no chance for the defendant to object to each and every one, and some may be admissible, and some may not be admissible.

"*The Court:* If you want to take testimony, the prosecuting attorney must produce them. He may have them marked and each one identified, and you will have your opportunity to get your testimony, if you want it. I will leave it to you, gentlemen, if you want that done we will do it.

"*Mr. Shekell:* I have made my objection.

"*Mr. Badgley:* And the stuff is in evidence?

"*The Court:* Exactly. You may take it and classify each one specifically marked, if you ask, so far as it is practicable to mark some of the stuff. It can be identified. If you desire that done, I will suspend for you to get your evidence.

"*Mr. Shekell:* You needn't suspend for us to make our case. The prosecution can make the case.

"*Mr. Badgley:* Your honor has opened the case on account of them. They may take action. The prosecutor hasn't said he wants to do anything. He hasn't said he wants this stuff in evidence. Your honor has put that in voluntarily.

"*The Court:* Very well. I will take the responsibility of directing it put in evidence. I will wait to see whether, in consequence, the defense wishes to open the case and put in testimony.

"*Mr. Badgley:* I don't know of any rule of law that will permit the reopening of a criminal case.

"*The Court:* Never mind. I have opened it. Whether there is any law for it or not, it can't hurt you.

"*Mr. Badgley:* I take an exception to that remark. Not only the respondent, but the attorneys, have some rights in a case.

"*The Court:* Mr. Badgley, the court has exercised and allowed great latitude. There are things due to the court. If the court is wrong, you have the benefit of your exception. I am not going to be lectured by any attorney at this bar at any time. I want that understood. Now, I open this, not for the prosecution, but for you. I don't think there is any favor extended to either side.

"*Mr. Badgley:* Does your honor say you have a right to open our case for us when we haven't requested it?

"*The Court:* I say I have a right to whether you ask it or not.

"*Mr. Badgley:* Your honor said you did open it.

"*The Court:* It means the same thing. I permit it to be opened if you want it opened. That's all there is of it.

And it may go on record that counsel for defense don't ask to put in any further testimony or for any time in which to put in any further testimony, and your argument may proceed."

That a trial court may, in the exercise of a sound discretion, reopen a case for the purpose of admitting testimony on behalf of either the prosecution or defense, is not open to question. See *People* v. *Kindra*, 102 Mich. 147 (60 N. W. 458); *Thompson* v. *Ellsworth*, 39 Mich. 719. For other States, see 12 Cyc. pp. 559–561. In exercising his discretion in reopening the case, the trial judge seems to have taken the greatest possible care to protect every substantial right of the respondent. Upon the introduction of the exhibits, his counsel were offered the opportunity to object or put in any testimony which the admission of the exhibits might make necessary. No advantage was taken of this offer by respondent's counsel, and we must conclude that no such testimony would have been offered by respondent had the exhibits been offered at the time of their identification by the various witnesses.

It is unnecessary to consider the fourth contention of respondent.

The fifth is ruled by the determination of this court in the case of the *People* v. *Vitali*, 156 Mich. 370 (120 N. W. 1003).

The conviction is affirmed.

BLAIR, C. J., and GRANT, MONTGOMERY, and McALVAY, JJ., concurred.