PEOPLE *v.* EGER.

1. CRIMINAL LAW—NONJURY TRIAL—NEGLIGENT HOMICIDE.
   In nonjury trial on charge of negligent homicide the trial court who saw and heard the witnesses was the best able to judge of the credibility to be accorded their testimony (Act No. 328, § 324, Pub. Acts 1931).

2. AUTOMOBILES—NEGLIGENT HOMICIDE—EVIDENCE.
   In prosecution for negligent homicide alleged to have resulted from operation of an automobile at an immoderate rate of speed and in a careless, reckless manner but not wilfully or wantonly, partially on the right-hand berm and while defendant was under the influence of intoxicating liquor, evidence, though conflicting, established defendant's guilt beyond a reasonable doubt (Act No. 328, § 324, Pub. Acts 1931).

3. INDICTMENT AND INFORMATION—STATUTORY OFFENSE—NEGLIGENT HOMICIDE.
   Information, framed in the language of the negligent homicide statute, which informed defendant of the nature of the accusation and of the time, place and negligent acts resulting in the death of a named person and fairly apprising him of the offense charged, constituted a sufficient compliance with constitutional and statutory requirements relative to informations (Const. 1908, art. 2, § 19; 3 Comp. Laws 1929, § 17259; Act No. 328, § 324, Pub. Acts 1931).

4. SAME—SPECIFIC REFERENCE TO STATUTE VIOLATED UNNECESSARY.
   An information charging an offense created by a general statute need not state specifically, by particular reference thereto, the statute violated by the act alleged to be a crime; it being sufficient to set forth such facts as bring the case within the provisions of some statute in force when the act was done, as the court takes judicial notice of the applicable law.

5. CRIMINAL LAW—REOPENING CASE TO PROVE VENUE.
   In prosecution for negligent homicide after defendant had moved for his discharge on the ground there was no proof that the crime had been committed within the jurisdiction of the court, it was not error to reopen the case to permit the prosecution to prove venue (3 Comp. Laws 1929, § 17354).

Appeal from Monroe; Golden (Clayton C.), J. Submitted June 12, 1941. (Docket No. 58, Calendar No. 40,824.) Decided September 2, 1941.

Martin Eger was convicted of negligent homicide. Affirmed.

*A. Gilmore Flues* and *Joseph A. Navarre, Jr.,* for appellant.

*Herbert J. Rushton,* Attorney General, and *Foster D. Luse,* Prosecuting Attorney, for the people.

STARR, J. Defendant appeals from conviction and sentence for negligent homicide.

As defendant attacks the sufficiency of the information filed against him August 23, 1938, we quote the material part thereof:

"That Martin Eger late of the township of Ida in the county of Monroe and State of Michigan, heretofore, to wit: on the 28th day of July in the year 1938 at the township of Ida in said Monroe county, did by the operation of a motor vehicle, to wit: an automobile at an immoderate rate of speed and in a careless, reckless manner, but not wilfully or wantonly, cause the death of Olen Osgood in the manner following, to wit: at about the hour of 9 o'clock in the afternoon of said day upon a certain public highway in said township of Ida, to wit: Lewis avenue, also known as US-23, did drive said automobile:

"A. while under the influence of intoxicating liquor;

"B. without having said automobile under such control as to be able to bring it to a stop within the assured distance ahead;

"C. at an excessive and immoderate rate of speed considering traffic conditions;

"D. off the right hand or easterly edge of the pavement on said highway while going at an excessive and immoderate rate of speed;

"And did then and there unlawfully and feloniously drive said automobile in a northerly direction on said highway off the right-hand or easterly edge of the two-lane pavement or public highway against the said Olen Osgood who was sitting on a bicycle approximately two feet off the easterly edge of the said pavement facing south, and so did unlawfully and feloniously inflict upon the said Olen Osgood divers injuries of which injuries so inflicted as aforesaid the said Olen Osgood did die; and so the said Martin Eger did unlawfully and feloniously cause the death of the said Olen Osgood; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan."

Defendant filed motion to quash such information, because (1) it was so indefinite, broad, and inclusive that it did not properly inform him of the offense charged; (2) it did not afford him the protection to which he was entitled under the Constitution; and (3) that it placed upon him the burden of canvassing the realm of statutory regulations covering the operation of motor vehicles and necessitated his being prepared to defend against any claimed breach of such regulations.

Such motion to quash was denied April 24, 1939. Defendant having waived jury trial, the case was heard by the trial court, who found him guilty and imposed sentence of from one to five years. Motion for new trial was denied. We granted leave to appeal September 6, 1939.

At about 9 o'clock on the evening of July 28, 1938, defendant, approximately 26 years old, accompanied by three people, was driving his automobile north on highway US-23 in Ida township, Monroe county.

The highway crosses a concrete bridge over Lockwood creek. Such bridge is about 22 feet long, 19 feet wide, and has abutments at each end of the bridge which extend between 4 and 4½ feet above the surface of the pavement. As defendant approached this bridge, 12-year-old Olen Osgood was seated on his bicycle at the southeast end of the bridge abutment and on the berm or shoulder of the road about two feet off the paved highway. He was seated on his bicycle with one foot on the ground and was talking to several children in the nearby field. There is considerable conflict in the testimony as to what then happened that resulted in the death of the Osgood boy. The prosecution claimed defendant was under the influence of intoxicating liquor; was driving at an excessive rate of speed; was driving with his right wheels off the paved highway and on the shoulder of the road; and that his car struck and killed the Osgood boy and then crashed into the bridge abutment.

Defendant admitted that he had been drinking during the afternoon and evening, but contended he was sober at the time of the accident. He claimed he had his car under control and was driving in a proper manner and position on the paved portion of the highway; that when he was about 20 feet south of the bridge, the Osgood boy suddenly and without warning propelled his bicycle away from the bridge abutment and onto the highway directly in the path of defendant's car; that he was unable to avoid striking the boy, but that he made an effort to do so by turning his car sharply to the right. The boy's body was found in the creek, about 30 feet northeast of the point of collision. Defendant's car crashed into the bridge abutment, seriously damag-

ing the right front end of the car, which then careened off into the creek.

Defendant admitted he drank whisky at the home of a lady friend about noon on the day of the accident; that during the afternoon and evening he and friends visited several taverns and drank beer and ale. Mrs. Markham, with whom he had spent the afternoon and who was in his car at the time of the accident, testified:

"I would say he was going at least 75 (miles) at that time, after we left Hickory Park and proceeded towards Ida.   *   *   *   I don't recall striking the bridge. I was almost in an hysterical state. I was awfully nervous about his driving the way he was and feeling the way he did, and he wouldn't talk to me.   *   *   *   I asked him to slow down his speed, I most certainly did. I knew he was driving too fast; I knew something was going to happen.   *   *   * I believe my companion [defendant], who was driving the car was in a state of intoxication."

Defendant was examined by Dr. Fieldhouse at his office in Ida about an hour after the accident. Dr. Fieldhouse testified:

"His inability to walk across my office when requested—it is my conclusion, was not primarily due to the injuries. In my opinion, as I stated before, it was due to excessive intoxicating liquor.   *   *   *
"He was asleep while he was in my office.   *   *   *
"From the determination I made, I would say and wish to be bound by my statement that this man at the time I examined him was under the influence of liquor and I make that answer on the basis of the tests that I made, that is all I have to go by."

Another docter, who examined defendant several hours after the accident, testified there was a strong

odor of alcohol on his breath. A deputy sheriff who talked with defendant about three hours after the accident testified:

"He [defendant] said he had been drinking quite a bit; he said they all had.  *  *  *  He said he was more or less hazy.  *  *  *  He made a statement to me that he had consumed considerable liquor and beer. From 1 o'clock he said they had been drinking pretty steady."

Several other witnesses testified that they smelled alcohol on defendant's breath.

Defendant testified that he was driving at 40 to 45 miles an hour. Other witnesses testified he was driving, at the time of the accident, at a speed variously estimated from 50 to 75 miles an hour. The pavement was dry; the sky was clear; and it was just beginning to get dusk.

There is conflict in the testimony as to whether defendant was driving with a portion of his car off the east edge of the pavement and on the shoulder of the road. Defendant testified that at no time was his car off the paved portion of the road. Several witnesses, including a deputy sheriff, testified there were tracks made by defendant's car on the shoulder of the road half the width of the car off the pavement; that such car tracks continued on the shoulder of the road and partially off the pavement for at least 70 feet from the point of the accident. One eyewitness testified defendant's car struck the deceased Osgood boy while he was seated on his bicycle on the shoulder of the road at the corner of the bridge abutment, and that defendant's car was about two feet off the east edge of the paved highway when the accident occurred.

It would serve no purpose to detail further the conflicting testimony in this case. At the conclusion of the trial the court said:

"We have had considerable testimony in this case, and the court has endeavored to follow that testimony closely, and the court is satisfied beyond a reasonable doubt that you are guilty of negligent homicide, and the court is further satisfied and beyond a reasonable doubt that you are guilty of negligent homicide on each of the several specified items of negligence set up in the information."

Defendant assigns as error that the prosecution failed to prove beyond a reasonable doubt the allegations of negligence charged in the information; that the greater weight of the evidence consistent with the physical facts established that the death of the Osgood boy resulted from his propelling his bicycle immediately in front of defendant's automobile in such a manner that the accident was unavoidable; and that the judgment of conviction was against the overwhelming weight of evidence.

The trial court saw and heard the witnesses and was best able to judge the credibility to be accorded their testimony. *People* v. *Beath,* 277 Mich. 473. Defendant was represented by able counsel, and the conflicting testimony appears to have been fairly submitted to the court. From a careful examination of the record, we are convinced that the guilt of defendant was established beyond a reasonable doubt.

Defendant contends the trial court erred in denying his motion to quash the information, or to order the information amended so as to inform him more specifically of the crime with which he was charged, or the statute or statutes he was alleged to have violated.

The Constitution, 1908, art. 2, § 19, provides in part:

"In every criminal prosecution, the accused shall have the right   *   *   *   to be informed of the nature of the accusation."

Section 17259, 3 Comp. Laws 1929 (Stat. Ann. § 28.985), provides:

"Sec. 45. The indictment or information shall contain:

"1. The nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged;

"2. The time of the offense as near as may be but no variance as to time shall be fatal unless time is of the essence of the offense.

"3. That the offense was committed in the county or within the jurisdiction of the court. But no verdict shall be set aside or a new trial granted by reason of failure to prove that the offense was so committed unless the accused have raised such question before the case is submitted to the jury."

The Michigan penal code, Act No. 328, § 324, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–324, Stat. Ann. § 28.556), provides as follows:

"Any person who, by the operation of any vehicle at an immoderate rate of speed or in a careless, reckless or negligent manner, but not wilfully or wantonly, shall cause the death of another, shall be guilty of a felony, punishable by imprisonment in the State prison not more than five years or by a fine of not more than $2,500."

The information was framed in the language of the negligent-homicide statute above quoted and complies with the constitutional and statutory requirements. It informed defendant of the nature of the accusation; it informed him of the nature of the offense, in language which fairly apprised him of the offense charged; it informed him of the time and place of the offense, and of his negligent acts which resulted in the death of Olen Osgood.

It was not necessary to indicate specifically the statute under which defendant was charged. In *People* v. *Hopper,* 274 Mich. 418, 421, we said:

"It is not necessary that an information indicate the particular section or even the statute upon which the case rests. *People* v. *Murn,* 220 Mich. 555."

In *People* v. *Murn, supra,* 558, this court quoted with approval Wharton's Criminal Pleading and Practice (9th Ed.), § 226, as follows:

"It is not necessary to indicate the particular section or even the particular statute, upon which the case rests. It is only necessary to set out in the indictment such facts as bring the case within the provisions of some statute which was in force when the act was done, and also when the indictment was found."

In *People* v. *Ingersoll,* 245 Mich. 530, 533, we held that an information charging the crime of negligent homicide was not defective because it failed to refer to the applicable statute by title, and we said:

"It was not necessary to refer to any statute in the information in order to have the court take judicial notice of the law of the State. If the information charged an offense denounced by statute the court, of course, would take judicial notice of applicable law."

Defendant claims error by the trial court in allowing the prosecution to reopen its case for the purpose of proving venue, after the defendant had moved for his discharge on the ground there was no proof that the crime had been committed within the jurisdiction of the court. In *People* v. *Bauer,* 216 Mich. 659, 662, we said:

"On the conclusion of the proofs, defendant's counsel moved for a directed verdict for the reason

that the venue had not been proven. The records of the stenographer were consulted and the omission disclosed thereby. On the prosecutor's request, the court permitted the proofs to be reopened and such proof offered. We think this was well within the discretion of the trial court. *People* v. *Blake,* 157 Mich. 533, and cases cited."

Section 17354, 3 Comp. Laws 1929 (Stat. Ann. § 28.1096), provides:

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this State in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

There was no error in permitting the reopening of the case for the purpose of proving venue. *People* v. *Chimovitz,* 237 Mich. 247.

The judgment of conviction is affirmed.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.