PEOPLE *v.* LAY.

1. CRIMINAL LAW—FALSE REPORT OF CRIME—ELEMENTS.
   The offense of false report of a crime consists of (1) making of
   a report by defendant to a peace officer of a crime; (2) falsity
   of the report; and (3) knowledge by defendant of its falsity
   when making it (CL 1948, § 750.411a).

2. SAME—FALSE REPORT OF CRIME—EVIDENCE.
   A policeman's testimony that defendant had made a report to
   him that defendant had poisoned some milk in order to catch
   the person who had been stealing his milk was competent testi-
   mony to establish that a crime had been reported (CL 1948,
   §§ 750.411a, 750.436).

3. SAME—FALSE REPORT OF CRIME—EVIDENCE.
   Testimony sufficient to sustain a finding of the falsity of the
   report of a fictitious crime would also be sufficient to sustain
   a finding that defendant knew the falsity of the report of the
   crime which he reported in prosecution for making false re-
   port of a crime (CL 1948, § 450.411a).

4. SAME—FALSE REPORT OF CRIME—PRESUMPTION.
   One charged with having made a false report of a crime can
   be presumed to know the truth or falsity of his own statement
   as to his own actions (CL 1948, § 750.411a).

5. SAME—NONJURY TRIAL—CORPUS DELICTI—ADMISSIONS—CURING
   ERROR.
   The reception of testimony on an adjourned day of a nonjury
   trial of a prosecution for making false report of a crime, which
   testimony was sufficient to complete the showing for a finding of
   the corpus delicti, *held,* to have cured error committed when
   testimony of defendant's admissions was received before the
   corpus delicti had been completely proved (CL 1948, § 750.-
   411a).

---

REFERENCES FOR POINTS IN HEADNOTES
[6] 53 Am Jur, Trial § 128.

6. Same—Discretion of Court—Reopening Proofs.

The trial court, in the exercise of sound discretion, may reopen a criminal case for the purpose of taking proofs on behalf of either the prosecution or the defense.

7. Same—False Report of Crime—Reopening Proofs—Nonjury Case—Discretion of Court.

Reopening of proofs in nonjury prosecution for falsely reporting a crime and reception of testimony to complete showing as to corpus delicti *held*, not an abuse of discretion on part of trial court, where reopening was without objection on part of defendant (CL 1948, § 750.411a).

8. Same—False Report of Crime—Poisoning Milk—Evidence.

Evidence fully justified trial court in finding defendant guilty in nonjury prosecution for false report of crime of poisoning milk for purpose of catching alleged thief (CL 1948, §§ 750.-411a, 750.436).

Appeal from Recorder's Court for City of Detroit; Schemanske (Frank G.), J. Submitted January 15, 1953. (Docket No. 85, Calendar No. 45,562.) Decided March 10, 1953.

Calloway Lay was convicted of falsely reporting a crime. Defendant appeals. Affirmed.

*Norman P. Silverstein,* for appellant.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, and *Samuel J. Torina* and *Samuel Brezner,* Assistant Prosecuting Attorneys, for the people.

Reid, J. Defendant, on leave granted, appeals from his conviction of a misdemeanor and sentence therefor to the Detroit house of correction for 90 days. Part of the statement of facts recited in defendant's brief is as follows:

"On February 17, 1952, officers from the city of Detroit police department came to 539 E. Palmer

avenue in the city of Detroit, where they were met by the appellant, Calloway Lay, who told them that he had put cyanide in a quart bottle of milk and put it outside his door in order to get the person who had been stealing his milk; that the milk had been stolen that morning, and he, the appellant, yelled down the hallway as the person was escaping with the milk not to drink the milk, because he, the appellant, had poisoned it. The next day, on February 18, 1952, the appellant, having been kept in jail all night, was questioned by a detective concerning the alleged incident and told said detective that it was not true that he, the appellant, had put poison in the bottle of milk."

The trial of defendant began on February 26, 1952, in recorder's court for the city of Detroit by a judge thereof acting as a magistrate without a jury on complaint and warrant charging the reporting of a fictitious crime to peace officers, under CL 1948, § 750.411a (Stat Ann 1951 Cum Supp § 28.643 [1]), which reads:

"Any person who shall wilfully make to any member of the Michigan State police, any sheriff or deputy sheriff, or any police officer of any city or village, or any other peace officer of this State, a fictitious report of the commission of any crime knowing the same to be false, shall be guilty of a misdemeanor, punishable by imprisonment in the county jail not more than 90 days or by a fine of not more than $100."

No copy of complaint or warrant is set forth in the record. Evidently defendant was charged with having falsely reported to the officer a violation of the following statute, CL 1948, § 750.436 (Stat Ann § 28.691):

"Any person who shall mingle any poison with any food, drink or medicines, with intent to kill or injure any other person, or shall wilfully poison any spring,.

well or reservoir of water, with such intent, shall be guilty of a felony, punishable by imprisonment in the State prison for life, or any term of years."

At the trial on February 26th, police officer Ralph Hatt testified that on February 17, 1952, he went to 539 East Palmer in Detroit and there met the defendant who told the officer that he had put cyanide in a quart bottle of milk and put it outside his door in order to get the man who had been stealing his milk.

Detective Casper Peek testified that he had a conversation with the defendant at the thirteenth precinct station, where the defendant was held, on February 18, 1952, and that defendant then denied he had put poison in a milk bottle. Defense counsel objected to the admission of the conversation on the ground that it was in the nature of a confession, and, as such, could not be used to establish the corpus delicti. The court struck the testimony. The people rested. The matter was adjourned until March 4, 1952.

The assistant prosecutor on the adjourned date moved for permission to reopen for the purpose of additional testimony. There were no objections made by the defense. Testimony was then given by officers Hardy and Langtry here recited in part and in condensed form.

Detective Wash Hardy testified as to the investigation made by the police at 539 East Palmer on February 17, 1952, that they notified the other residents of the apartment not to drink any milk if they had picked up a bottle; that they were unable to find that any milk had been stolen; that about 4 scout cars, 8 patrolmen, 5 detectives, an inspector and a sergeant were involved in the investigation.

Inspector Albert Langtry of the police scientific laboratory testified that on February 17, 1952, he

talked to the defendant at the thirteenth precinct, and examined his hand and clothing for traces of cyanide but found none; that defendant told him he took some cyanide from the Ford Motor Company, wrapped it in a paper towel, carried it home and threw the paper towel in a wastebasket; that the witness then went to the defendant's home, examined the premises and wastebasket and found no evidence of cyanide or a paper towel, and that no milk had been turned over to him.

Inspector Langtry was recalled and testified that on February 18, 1952, at the thirteenth precinct station, he had a conversation with the defendant who told him that he had been drunk, that he did not put any cyanide in the milk, and that he did not have any milk stolen. At this point defense counsel requested that the said statement be stricken. The court ruled:

"I will let it stand. It is a statement of fact, he didn't put any cyanide in the milk. Let it stand."

Defendant does not on this appeal claim error specifically based on this ruling.

Defendant Calloway Lay testified that he had milk stolen from his home for about 3 weeks; that he did not call the police, but he told the milkman when bringing the milk to knock on his door; that on the day in question, the milkman knocked and somebody stole his milk 3 minutes later; that he yelled, "Whoever stole that milk had better not drink it, because I put poison in it;" that he did not call the police officer who was there shortly after, but he told the officer what he had yelled in the hall; that he did not tell the police he put poison in the milk.

On cross-examination he testified that he had talked to inspector Langtry in the police station but did not remember telling him he had taken cyanide from the Ford Motor Company in a paper

towel, or that he put cyanide in the milk and threw the paper towel in a wastebasket; that he had been drinking that night and got in about 5 a.m. and the milkman woke him up at 9:30 a.m.

Defense counsel renewed his motion to dismiss which motion the court denied. The court found defendant guilty and sentenced him to 90 days in the Detroit house of correction.

Defendant claims that the trial court was in error by admitting the confession of the defendant without first requiring the people to establish the corpus delicti, from other sources.

The offense charged consisted of 3 elements, first, the making of a report by the defendant to the police officer of the putting of poison into the bottle of milk with intent to kill or injure some person; second, the falsity of the report; third, knowledge by defendant of the falsity when he made the report. Officer Hatt gave testimony of the making of the report; this testimony was competent. It was not proof of an admission, but was testimony as to a fact and in view of the nature of the offense charged, practically the only way the first element of the offense could be proven.

The trial court was in error in permitting testimony of admissions by defendant to establish the second and third elements, when no testimony sufficient to establish the entire corpus delicti had been given. Testimony sufficient to sustain a finding of the falsity of the report would also be sufficient to sustain a finding that defendant knew the falsity of the report. Defendant can be presumed to know the truth or falsity of his own statement as to his own actions. The reception of testimony on the adjourned day, sufficient to complete the showing for a finding of the corpus delicti, can be said to have cured the error, at least in view of the case being tried by the court without a jury. We are

not, in this case, ruling that if there had been a jury, the error would or would not have been curable by such means. We determine that the error was cured in the instant case.

Defendant claims the court was in error in permitting the people to reopen their case after they had rested, and to introduce new and additional witnesses and testimony. See *People* v. *Baker,* 332 Mich 320, in which we say at pages 324, 325:

"We note that at the close of the people's case defendant made a motion for a verdict of not guilty, whereupon the trial court reopened the case and permitted a witness for the people to testify that the pills were found lying loose in the purse. It is the rule in criminal cases that the trial court in the exercise of sound discretion may reopen a case for the purpose of admitting testimony in behalf of either the prosecution or the defense. See *People* v. *Blake,* 157 Mich 533; *People* v. *Chimovitz,* 237 Mich 247; and *People* v. *Eger,* 299 Mich 49. The trial court was not in error in failing to grant defendant's motion."

The record in this case, as we have heretofore noted, shows no objection to the people reopening their case on the adjourned day. It was within the discretion of the trial judge to permit the prosecution to reopen their case and to introduce further testimony. We consider that the court did not abuse his discretion in the instant case.

The evidence fully justified the court in finding the defendant guilty of the offense with which he was charged. The judgment appealed from is affirmed.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.