619 N.W.2d 536 (2000)
PEOPLE of the State of Michigan, Plaintiff-Appellant,
v.
Joseph BORRELLI, Defendant-Appellee.
No. 117162, COA No. 227101.
Supreme Court of Michigan.
December 6, 2000.
On order of the Court, the application for leave to appeal from the June 19, 2000 decision of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.
CORRIGAN, J., concurs and states as follows:
I join in the order denying leave to appeal, but write separately to express my concern with the application of the corpus delicti rule to the crime of knowingly filing a false police report, M.C.L. § 750.411a; MSA 28.643(1).
Defendant lost his car in the early morning hours while driving home from a bar. When he could not find it the next day, he reported to the police that he had been carjacked by a dark complected African-American male. Three weeks later, during a follow-up interview with the police, defendant admitted that he had no memory of how he had become separated from his car and that he had no knowledge of ever being carjacked. Defendant was then charged with knowingly filing a false police report in violation of M.C.L. § 750.411a; MSA 28.643(1). At defendant's preliminary examination, the prosecution admitted that it had no evidence of the falsity of the police report apart from defendant's own admission. Accordingly, the district court dismissed the charges on the basis of Michigan's common law corpus delicti rule. The circuit court then affirmed and the Court of Appeals denied the prosecutor's application for leave to appeal.
In Michigan, the common law corpus delicti rule provides that a defendant's confession may not be admitted as evidence unless there is direct or circumstantial evidence independent of the confession establishing the occurrence of a specific injury (for example, death in cases of homicide) and some criminal agency as the source of the injury. People v. Konrad, 449 Mich. 263, 269-270, 536 N.W.2d 517 (1995). The prosecutor now argues that we should abandon Michigan's common law rule in favor of the less stringent federal rule set forth in Opper v. United States, 348 U.S. *537 84, 75 S.Ct. 158, 99 L.Ed.2d 101 (1954). While there may be good reasons to adopt the federal rule, the prosecution's argument was considered and rejected by this Court in People v. McMahan, 451 Mich. 543, 548 N.W.2d 199 (1996). Therefore, the principle of stare decisis counsels against reconsidering the argument again at this time.
Although the prosecution's argument does not provide a sound reason for this Court to grant its application for leave to appeal, the facts of this case aptly demonstrate the substantial cost of applying the common law corpus delicti rule to crimes involving false statements. To overcome the common law corpus delicti rule where the defendant is charged with violating M.C.L. § 750.411a; MSA 28.643(1), the prosecution must present independent evidence establishing the falsity of the police report at issue. People v. Lay, 336 Mich. 77, 82, 57 N.W.2d 453 (1953). This imposes an extremely onerous burden, because it effectively requires the prosecution to produce independent evidence of a negative fact. Here, for example, the prosecution would have to prove, through independent evidence, that defendant was not the victim of a car jacking. Such evidence would not likely exist absent extraordinary police efforts.
False police reports are a significant societal problem because they require the police to expend time and effort investigating "crimes" that did not occur. To expect the police to continue to investigate a nonexistent "crime" after the complainant has admitted that the report was false seems to ask too much of law enforcement. On the other hand, to allow persons making false reports to escape conviction does little to deter false police reports. Accordingly, I urge the Legislature to consider whether the cost of the corpus delicti rule is justified in the context of M.C.L. § 750.411a; MSA 28.643(1).[1]
NOTES
[1] In a related vein, I also urge the Legislature to consider the burden imposed upon law enforcement officers by false 911 service calls. The Detroit News reported that, in 1994, only 1 of every 200 emergency calls placed in Detroit reported a legitimate emergency. Making Emergency Calls Work, Detroit News, Oct. 10, 1994, at 8A. Because M.C.L. § 750.411a does not specifically apply to reports made to 911 operators, it would not necessarily be applicable to knowingly false 911 calls.