**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 8, 2003**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

JACK CHAVIS,

    Defendant-Appellee.

No. 120112

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

After waiving his right to a jury trial, defendant was convicted in a bench trial of violating MCL 750.411a(1), which makes it a crime to intentionally make "a false report of the commission of a crime to a member of the Michigan state police, a sheriff or deputy sheriff, a police officer of a city or village, or any other peace officer of this state

knowing the report is false . . . ."[1]  The issue presented is whether defendant may be convicted of filing a false report pursuant to this statute, where defendant provided false details concerning the crime.  We hold that defendant may be convicted pursuant to the statute, and, therefore, we reverse the Court of Appeals reversal of defendant's conviction.

FACTS

On April 14, 1998, defendant called 911 and reported that he had been carjacked.  Officer Robert Sanchez responded to the call.  He testified that he and his partner met defendant at South Fort and Francis streets in the city of Detroit and that defendant informed them that he had been carjacked by four unknown black males.  Defendant informed Officer Sanchez that he was carjacked in the area of South Fort and Outer Drive and that the carjackers kicked him out of the car at South Fort and Francis.  Defendant indicated to the officer that one of the men had put a gun to defendant's head and two of the other men had jumped into the car with baseball bats and that he had been beaten with a baseball bat.  He informed the officer that the men had stolen his wallet, a gold necklace, and a gold ring.  Officer Sanchez and his partner made a report of the carjacking.  Defendant's car, a Honda Civic CRS, was found about an hour later being driven by

_____

[1] Defendant was sentenced to thirty days in jail and the remainder of one year on probation.

2

William Bonner. After a brief chase, Mr. Bonner crashed the car into a tree and was arrested.

Officer Sanchez testified that he informed defendant that he did not believe that defendant was actually carjacked. He explained that his assessment was based on defendant's demeanor, which he described as defensive and hostile, and the fact that defendant did not live in the area and gave no explanation for why he was in the area. Officer Sanchez also testified that he did not observe any physical injury to defendant and that defendant did not request any kind of medical attention.

Detective Sergeant Randell Schnotala testified that at the time of the incident, he was assigned to the carjacking task force working out of Detroit Police headquarters. He was assigned to investigate the reported carjacking. After speaking with Mr. Bonner, Detective Schnotala became suspicious of the truthfulness of the report filed by defendant and made several attempts to contact defendant to discuss the incident. A few days later, defendant telephoned Detective Schnotala and agreed to meet the detective at police headquarters.

Detective Schnotala testified that he immediately informed defendant that defendant was not under arrest, that defendant did not have to speak with him, and that defendant could leave at any time. Detective Schnotala explained that

3

he had some questions and concerns about the report that had been filed.  He testified that defendant then told him that the report was not true "beginning with the location." Detective Schnotala stated that defendant informed him that defendant was a crack cocaine user and that he had given a false location because he did not want the police to know why he was in the area.  Detective Schnotala testified that

> [a]t that time I told him we could reduce this to writing, take care of matters, get him on his way. He could go about the business of getting his car back, but that he would be charged with filing a false police report.  At this time he became very agitated with me and refused to talk any more about the incident and stormed out of my office.

Detective Schnotala explained that he informed defendant that he would be charged with filing a false police report because defendant said that the report he had filed was not true.

Defendant testified that he was in southwest Detroit on April 14, 1998, to purchase crack cocaine.  He spotted the supplier from whom he had purchased crack cocaine earlier in the day and let the supplier get into defendant's car. Defendant informed the supplier that he wanted $20 worth of crack cocaine, and they drove to a house.[2]  The supplier went into the house to get the crack cocaine.  Defendant stated that when the supplier left the house, the supplier returned to the car.  As the supplier was again sitting in the

---

[2] On cross-examination, defendant stated that he did not drive the supplier to the house—they were already there.

4

passenger seat showing defendant the crack cocaine, defendant heard the hatchback of his car open. Two men entered the car. Defendant testified that the supplier pulled the keys out of the ignition and that one of the men in the back pointed a gun at defendant, demanding that defendant give them everything defendant had. Defendant stated that he told them that the gunman would have to kill defendant because defendant "had a lot of gold on."

Defendant testified that the gunman then put down the gun and began choking him from behind until he passed out and that the supplier was hitting defendant. When defendant "came to [he] was half in [his] car and half out." Defendant further explained that when he "came to," his jewelry, his watch, his necklace, his rings, and his wallet had been taken. He stated that he observed four men walking down the road and ran after them. He testified that the men surrounded him and began attacking him, one of them beating him with a pool cue and another hitting him in the jaw.[3] He stated that he received a cut on his head and felt like he had broken his hand during the attack after being hit with the pool cue. Defendant testified that when he asked them to give him his keys so that he could go home, they told him to move away from his car. Two or three of the men jumped into his car and drove off.

---

[3] Defendant denied that he had stated that one of the men had a baseball bat.

5

Defendant testified that he then ran to Fort Street, entered a restaurant, and called the police. He stated that he told police that he was at the gas station and that he had just left his sister's house when he was carjacked and made to drive to the gas station. Defendant stated that he had lied about the location because he did not want anyone to know that he was buying crack cocaine. He stated that he showed the cut to the officer and indicated that his hand felt like it might be broken. However, when the officers asked if he wanted an ambulance, he declined. Defendant acknowledged that when he spoke with Detective Schnotala, he did not give the detective any specific details or provide any written statement about what had actually occurred.

At the conclusion of the trial, the trial court found defendant guilty of the charge. The trial court stated:

> This is somewhat of an interesting case in the sense that he's charged with filing a false report of a felony.
>
> And without going into a lot of detail as far as fact finding goes, I do believe from all the evidence and the testimony that the defendant, Mr. Chavis, was carjacked. I believe that his car was taken from him with the use of force, and that he didn't voluntarily turn it over or surrender it.
>
> And that's essentially what happened.
>
> However, in this case, because of, and I believe some of the defendant's testimony, too. I believe his testimony about using crack. I believe his testimony about going around looking for crack and having contact with various incendiary people in terms of seeking out some crack cocaine.

6

And I do also believe and find that the defendant did tell, did lie to the police about how it happened, where it happened, and some other miscellaneous details.

So on the one hand I believe that the defendant did make some false statements and give some false facts [sic] about the crime itself. And I do believe that in essence the defendant was the victim of a carjacking.

And when the defendant told the police officer those false facts, he knew that they were false and deliberately made those false statements.

And for that reason, I'm going to find the defendant guilty of the charge.

I find that the elements of the offense have been made out.

Defendant appealed, and the Court of Appeals reversed the conviction. 246 Mich App 741; 635 NW2d 67 (2001). The Court of Appeals explained:

Here, the statute proscribes the intentional making of "a false report of the *commission* of a crime." MCL 750.411a(1) (emphasis added). The plain language of the statute provides that those who make police reports falsely claiming that a crime has been committed are guilty of making a report of a false crime. See, e.g., *People v Lay,* 336 Mich 77; 57 NW2d 453 (1953) (the defendant was convicted, under the predecessor of § 411a, of making a "fictitious report of the commission of any crime" after falsely telling the police that he had put poison in a bottle of home-delivered milk).[1] To construe the statute to encompass false information concerning the details of an actual crime would be a significant departure from the plain language of the statute. Because the false information reported by defendant in the present case did not pertain to whether a crime occurred, the conviction for filing a false report of the commission of a crime cannot be sustained.[2] Accordingly, we reverse defendant's conviction and sentence.

¹ Our research has unveiled no Michigan cases where a defendant was convicted of the crime of making a false report of the commission of a crime for lying about details other than whether a crime had actually been committed. Our research of federal and foreign states' case law has not unveiled any cases where a defendant was convicted of this type of crime for lying about details other than whether a crime had actually been committed. See, e.g., *Smith v Arkansas*, 1999 WL 200671 [unpublished opinion] (Ark App, 1999) (false report that husband broke into home); *People v Trimble*, 181 Ill App 3d 355; 537 NE2d 363 (1989) (defendant falsely told police his car was stolen); *State v Matilla*, 339 NW2d 54, 55 (Minn, 1983) (defendant falsely reported being burglarized); *State v Kachanis*, 119 RI 439, 440; 379 A2d 915 (1977) (defendant falsely reported his car stolen).

² The trial court's finding that a carjacking actually occurred is unchallenged on appeal.

[246 Mich App 743-744.]

On April 30, 2002, this Court granted the prosecutor's application for leave to appeal. 466 Mich 860 (2002).

STANDARD OF REVIEW

This case concerns an issue of statutory interpretation. Issues of statutory interpretation are reviewed de novo. *People v Thousand*, 465 Mich 149, 156; 631 NW2d 694 (2001).

ANALYSIS

MCL 750.411a(1) provides:

Except as provided in subsection (2), a person who intentionally makes *a false report of the commission of a crime* to a member of the Michigan state police, a sheriff or deputy sheriff, a police

8

officer of a city or village, or any other peace officer of this state knowing the report is false is guilty of a crime as follows:

(a) If the report is a false report of a misdemeanor, the person is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $100.00, or both.

(b) If the report is a false report of a felony, the person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both. [Emphasis added.]

When interpreting a statute, our goal is to ascertain and give effect to the intent of the Legislature. *People v Koonce*, 466 Mich 515, 518; 648 NW2d 153 (2002). We begin by reviewing the plain language of the statute. If the language is clear and unambiguous, no further construction is necessary, and the statute is enforced as written. *Id.; Wickens v Oakwood Healthcare Sys,* 465 Mich 53, 60; 631 NW2d 686 (2001).

The issue in the present case centers on whether lying about details concerning a crime constitutes "a false report of the commission of a crime . . . ."[4] MCL 750.411a(1). The Court of Appeals and the dissent construed this language to mean that only "those who make police reports falsely claiming that a crime has been committed are guilty of making a report of a false crime." 246 Mich App 743. We disagree with this

---

[4] Defendant admitted to the police officer that he had lied. Accordingly, there is no dispute about whether defendant's statements were made intentionally and knowingly.

9

interpretation and find it inconsistent with the plain language of the statute.

As placed in the statute, the word "false" modifies the word "report," not the word "crime," as the Court of Appeals and the dissent's interpretations suggest. The word "false" is defined as

> 1. Not true or correct; erroneous; wrong: *a false statement*. 2. Uttering or declaring what is untrue; lying: *a false witness*. 3. Not faithful or loyal; treacherous; hypocritical: *a false friend*. 4. Tending to deceive or mislead; deceptive: *a false impression*. 5. Not genuine; counterfeit . . . . [*Random House Webster's College Dictionary* (1997).]

The word "report" is defined as "1. A detailed account of an event, situation, etc. usu. based on observation or inquiry. 2. A statement or announcement. . . ." *Id.* It is not disputed that defendant made untrue and misleading statements when he provided his original account of events to the officers.[5] First, defendant clearly acknowledged that he had lied about where the carjacking occurred and what he was doing at the time the carjacking occurred. Second, he informed police that he did not know any of the perpetrators when, in fact, he knew one of them from his previous purchase of crack cocaine. Third, although defendant stated that he had been

---

[5] While the false statements in the present case occurred in defendant's initial communications with the police, we note that the definition of "report" does not require that the statements always be made at the outset of an investigation. The definition could cover subsequent communications as well.

beaten with a pool cue or baseball bat, resulting in a cut to his head and an injury to his hand, the officer stated that he observed no physical injuries on defendant and that defendant did not request any medical attention.  Thus, in describing what had occurred, defendant made a false report.

Our inquiry does not end there, however.  Following the phrase "false report" in the statute are the words "of the commission of a crime."  Defendant's false report must be "of the commission of a crime."  "Commission" is defined as "the act of committing or perpetrating a crime . . . ."  *Id.* Replacing the word "commission" with its definition, the statute prohibits making a false report of "the act of committing or perpetrating" a crime.  One who provides false details about the crime has made a false report of "the act of committing or perpetrating" a crime.  Thus, the plain language of the statute is not limited to only those situations where no crime *has been committed*; it also applies where one reports false details about the crime.[6]  Because defendant reported

---

[6] The dissent criticizes our opinion as failing to provide guidance to the bench and bar and suggests that it will inhibit victims from reporting crimes for fear they will be convicted for insignificant misstatements. We would remind the dissent that the statute requires a person to *intentionally* make a false report of the commission of a crime.  This intent requirement should obviate many of the "problems" that the dissent asserts our opinion will create.

The dissent also criticizes our opinion as allowing the prosecutor "unfettered discretion," *post* at 7, in determining when to bring charges under the statute.  It is invariably the
(continued...)

11

false details about the crime, he can be convicted under the statute.[7]

For these reasons, we reverse the judgment of the Court of Appeals and reinstate defendant's conviction.

<div style="margin-left:auto; width:fit-content;">

Elizabeth A. Weaver
Maura D. Corrigan
Michael F. Cavanagh
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

</div>

---

[6](...continued)
case that the prosecutor always has great discretion in deciding whether to file charges. Such executive branch power is an established part of our constitutional structure. Any apprehension that the prosecutor may abuse this power should be tempered, in part, by the knowledge that there are significant systemic protections afforded defendants, including the defendant's right to a preliminary examination and right to a jury trial. Moreover, there are other protections against the misuse of power that spring from daily scrutiny by the media as well as from periodic elections, which call all office holders to account to their constituents.

[7] Our interpretation and application of the statute is consistent with one of the purposes of the statute, which is to avoid distracting the police and misusing police resources.

12

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                        No. 120112

JACK CHAVIS,

    Defendant-Appellee.

_____

KELLY, J. (*dissenting*).

The majority stretches the statutory phrase "false report of the commission of a crime" in MCL 750.411a(1) to mean a report of false details concerning the commission of a crime. This interpretation goes beyond the plain meaning of the words the Legislature used.

I agree with the Court of Appeals that "[b]ecause the false information reported by defendant in the present case did not pertain to whether a crime occurred, the conviction for filing a false police report cannot be sustained." 246 Mich App 741, 743; 635 NW2d 67 (2000). To the extent that this statute is ambiguous, traditional judicial construction

favors my interpretation. Parenthetically, the majority ignores the inherent question that it raises: how significant must a falsehood be to trigger criminal liability under the statute?

<center>I</center>

The majority holds that "the plain language of the statute is not limited to only those situations where no crime *has been committed*; it also applies where one reports false details about the crime." *Ante* at 12. It arrives at this conclusion by defining the words "report" and "commission." These words, it concludes, refer to a "detailed account" of "the act of committing a crime."

The majority's interpretation does not accurately construe the plain meaning of the statute's words because it glosses over the meaning of "the commission of a crime." The only facts that establish "the act of committing a crime" are those that satisfy the elements of a criminal statute. It follows then that one violates the statute only in falsely alleging facts that comprise the elements of a criminal statute. Extraneous details do not pertain to whether a crime has been committed.

An example clarifies the point. MCL 750.72 makes it a crime to burn a dwelling house. The facts establishing the commission of that crime are limited to those showing (1) wilful or malicious (2) burning (3) of a dwelling house, its

<center>2</center>

contents, or any building within its curtilage. A false report that the perpetrator wore black clothes while setting the fire when, in fact, he wore white does not constitute the report of a false crime, i.e., a false report of the commission of a crime. Rather, it constitutes facts not essential to the crime.

The majority's interpretation of MCL 750.411a(1) would render criminal the report of black clothes in my example. It effectively reads the limiting phrase "of the commission" right out of the statute. Doing so ignores the well-established canon of avoiding an interpretation that renders part of a statute nugatory or mere surplusage. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002).

For the reasons stated, I interpret MCL 750.411a to prohibit only the reporting of a false crime, meaning the false reporting of facts that establish the commission of a crime. Unlike the majority's analysis, this interpretation comports with the plain language of the statute and the "fair import" of the words used. MCL 750.2.

This Court made a proper statutory interpretation in *People v Lay*, 336 Mich 77; 57 NW2d 453 (1953). There, it construed the statute from which MCL 750.411a(1) was drawn. It affirmed the defendant's conviction after he falsely reported to the police that he had poisoned a bottle of home-

delivered milk. The Court held that the defendant's conviction was proper because he alleged a crime that had not been committed. He alleged facts that were false and that satisfied the statutory elements of the crime.

Here, unlike in *Lay*, the state charged defendant for falsely reporting where in Detroit the carjacking crime occurred and why he was in that area. The carjacking statute, MCL 750.529a, requires a showing that a person, (1) by force or threat of force, (2) took a motor vehicle (3) in the presence of the lawful possessor of it. Defendant did not falsely report any of the facts establishing the elements of the carjacking. In the words of the trial court, "Mr. Chavis [] was carjacked. [H]is car was taken from him with the use of force, and . . . he didn't voluntarily turn it over or surrender it."

Because defendant truthfully reported these, the essential aspects of the crime, he should not be chargeable under MCL 750.411a. The false statements he made were immaterial to the commission of the crime of carjacking. Accordingly, I would affirm the Court of Appeals reversal of defendant's conviction.

## II

When reasonable but differing interpretations of a statute exist, the statute is ambiguous. *In re MCI*, 460 Mich 396, 411; 596 NW2d 164 (1999). Hence, because the majority's

4

reading of the statute is arguably reasonable, as is mine, the incompatibility of our interpretations renders this statute ambiguous. After judicial construction, however, the ambiguity is resolved in a manner that favors my interpretation.

MCL 750.411a(1) is the part of the statute under consideration here. It reads "a person who intentionally makes a false report of the commission of a crime to a member of the Michigan state police . . . or any other peace officer of this state knowing the report is false is guilty of a crime . . . ." The two subsections under subsection 1 clarify its meaning.[1] Subsection (1)(a) makes a false report of a misdemeanor itself a misdemeanor and lists the penalty. Subsection (1)(b) makes a false report of a felony itself a felony and lists a far greater penalty than does subsection (1)(a).

If the majority's interpretation of subsection 1 were correct, a report falsifying nonessential details of a crime would draw a much greater penalty if the crime were a felony than if it were a misdemeanor. However, the details might be the same for each crime, e.g., the perpetrator wore black. It

---

[1] 2A Singer, Statutes & Statutory Construction (6 ed, 2000), § 47:06, pp 226-227 ("[I]t is an elementary rule of construction that all sections of an act relating to the same subject matter should be considered together unless to do so would be plainly contrary to the legislative intent.").

is not readily apparent why the Legislature would have distinguished in terms of criminal severity and penalty between a report of false details of a felony and a report of the same false details of a misdemeanor.

It is obvious, however, why the Legislature would have distinguished in terms of criminal severity and penalty between a report of a false misdemeanor and a report of a false felony.  There, the reports would be different.  One of the crimes would be more serious, hence a false report of it would deserve a more severe penalty.

Therefore, any ambiguity in "false report of the commission of a crime" is best resolved to mean that the report to be criminalized is the report of a false crime.

## III

I note that the majority fails to deliver any guidance to the bench and bar about how to apply its interpretation of this statute.  Specifically, it fails to address how material a falsified detail must be in order to trigger criminal liability under the statute.  Did the Legislature intend to criminalize the intentional falsification of even the most insignificant detail of a reported crime?  This would be permitted under the majority's interpretation.  If some false details should be made crimes and others not, where does one draw the line?  Without guidance on this issue, the bringing of charges under this statute becomes a matter of the

prosecutor's unfettered discretion, raising other legal problems.[2]

The interpretation of the statute that I propose, by contrast with the majority's, limits this offense to the falsification of certain identifiable information. My interpretation not only comports with the Legislature's intent, it establishes clear boundaries of which falsifications are criminal, thus providing comprehensible guidance to our courts and our citizens.

Additionally, my interpretation avoids another problem that looms in the majority's broad reading of the statute: that it may inhibit victims from reporting crimes for fear that they may be convicted themselves for an insignificant misstatement of fact to law enforcement officers.

---

[2]The majority takes issue with my reference to the dangers of the prosecution exercising unfettered discretion. The United States Supreme Court expressed the concern I raise when it made its decision in the case of *United States v Armstrong*, 517 US 456, 464; 116 S Ct 1480; 134 L Ed 2d 687 (1996), quoting *Oyler v Boles*, 368 US 448, 456; 82 S Ct 501; 7 L Ed 2d 446 (1962). There, it found that unfettered discretion in the prosecution can result in a violation of the constitutional right to due process of law. More to the point in this case, my concern is that the majority's expansive interpretation of MCL 750.411a allows too easily for the statute's selective enforcement. It thereby increases the possibility that the statute will be used as a coercive tool in violation of the constitutional constraints that govern prosecutors. While the majority enumerates current protections from prosecutorial abuse, I am unconvinced that the existence of these protections excuses this Court's failure to provide the guidance that could afford more immediate and certain protection.

## III

Accordingly, I would affirm the conclusion reached by the Court of Appeals.  This Court should interpret MCL 750.411a(1) to criminalize only the false reporting of facts that establish the commission of a crime.  As defendant made no such false statement, the Court of Appeals reached the correct conclusion in reversing his conviction.

Marilyn Kelly