## UNITED STATES *v.* MEAGHER.[1]

*(Circuit Court, W. D. Texas.* November 23, 1888)

1. **COURTS—FEDERAL JURISDICTION—CRIMES.**
   A cession by a state to the United States of "exclusive jurisdiction" over certain land, providing that the state shall retain concurrent jurisdiction with the United States so far that all process, civil or criminal, issued under authority of the state, may be executed by the state officers upon any person amenable to the same within the limits of the land so ceded, confers on the United States "exclusive jurisdiction," within the meaning of Rev. St. U. S. § 5339, prescribing punishment for crimes committed in places within the exclusive jurisdiction of the United States.

2. **SAME—BURDEN OF PROOF.**
   The burden is on the government to show that the crime was committed on land which was under the exclusive jurisdiction of the United States.

3. **HOMICIDE—INDICTMENT—DEGREE OF CRIME.**
   Under a statute providing that one may be found guilty of any offense, the commission of which is necessarily included in the one with which he is charged, one charged with murder may be found guilty of manslaughter.

4. **SAME—MURDER—DEFINITION.**
   Murder is where a person of sound memory and discretion unlawfully and feloniously kills any human being, in the peace of the sovereign, with malice prepense or aforethought, express or implied.

5. **SAME—MALICE.**
   Malice, as applied to murder, need not denote spite or malevolence, hatred or ill will, to the person killed, nor that the slayer killed his victim in cold blood, as with a settled design; but a killing from an evil design and malignant spirit may be of malice, implied by law from the absence of lawful excuse.

6. **SAME.**
   All the facts in the case, however trivial, should be considered as bearing on the question of malice.

7. **SAME—ACCIDENTAL KILLING.**
   The killing of a person by the accidental discharge of a pistol by one engaged in no unlawful act, and without negligence, is homicide by misadventure, and is no crime.

[1] Publication delayed by failure to obtain copy of opinion at time of its delivery.

8. SAME—MANSLAUGHTER.

Any unlawful and willful killing of a human being without malice, including a negligent killing, which is also willful, is manslaughter, and it may exist where there is no evidence of sudden heat of passion.

9. SAME—INTOXICATION AS DEFENSE.

Intoxication is no excuse for crime, but should be considered as affecting defendant's mental condition, with reference to his capability of a specific intent.[1]

10. SAME—REASONABLE DOUBT.

A reasonable doubt of guilt sufficient to acquit exists, if, after an impartial comparison and consideration of all the evidence, the jury can candidly say that they are not satisfied of defendant's guilt.[2]

11. SAME.

The jury should convict, if, after an impartial comparison and consideration of all the evidence. they have an abiding conviction of defendant's guilt, such as they would be willing to act upon in the more weighty and important matters relating to their own affairs.[2]

Indictment against William Meagher for Murder committed on a government reservation.

*Rudolph Kleberg*, for the Government.

*A. J. Evans*, for defendant.

MAXEY, J., (*charging jury*.)  The indictment preferred against William Meagher, the defendant in this case, is for the murder of Joseph Horan. An important question affecting the jurisdiction of the court has arisen during the progress of the trial, the disposition of which must, under the facts in evidence, be remitted to your determination.  It is alleged in the indictment that the offense was committed in the county of Kinney, within the Western district of Texas, "and at the military post of Fort Clark, which said post and fort was then and there, and before said time, [October 10, 1888,] ceded to the United States, and was then and there, and is now, under the exclusive jurisdiction of said United States."  This court could not entertain jurisdiction of the offense charged against the defendant unless it be made to appear that the homicide was committed "within any fort, arsenal, dock-yard, magazine, or in any other place or district of country under the exclusive jurisdiction of the United States." Rev. St. U. S. § 5339.   Ordinarily offenses of this character are tried and determined by courts of the respective states, and it is only when they are committed, following the words of the statute, in some "place or district of country under the exclusive jurisdiction of the United States," that the jurisdiction of the federal courts attaches.   It is insisted by the government that jurisdiction is complete in this case, for the reason that the chief executive of the state of Texas, acting pursuant to a general

---

[1] On the general subject of intoxication as an excuse for crime, see the note to State v. Tatlow, (Kan.) 8 Pac. Rep. 267; Territory v. Davis, (Ariz.) 10 Pac. Rep. 359, and note; Buckhannon v. Com., (Ky.) 5 S. W. Rep. 358, and note; Wilkerson v. Com., (Ky.) 9 S. W. Rep. 836; Clore v. State, (Tex.) 10 S. W. Rep. 242; Cleveland v. State, (Ala.) 5 South. Rep. 426.

[2] For definitions of "reasonable doubt" in criminal cases, and instructions on that subject, see U. S. v. Hughes, 84 Fed. Rep. 732, and note; State v. Sauer, (Minn.) 38 N. W. Rep. 355, and note; State v. Walker, (Mo.) 9 S. W. Rep. 646, and note.

law of the state, has by public proclamation ceded to the United States exclusive jurisdiction over the site or territory occupied by the military post of Fort Clark. A copy of that proclamation, duly authenticated by the secretary of state, has been admitted in evidence, which, after minutely defining the boundaries of the ceded territory, proceeds as follows:

"Now, therefore, I, John Ireland, governor of the state of Texas, under and by virtue of the authority vested in me by the constitution and laws of the said state of Texas, have ceded, and by these presents do cede, to the United States, exclusive jurisdiction over the above-described land, to hold, use, occupy, own, possess, and exercise said jurisdiction over the same: provided, that this cession of jurisdiction is granted and made upon the express condition that the state of Texas shall retain concurrent jurisdiction with the United States over said land, and every portion thereof, so far that all process, civil or criminal, issued under authority of this state, or any of the courts or judicial officers thereof, may be executed by the proper officers of this state upon any person amenable to the same within the limits of the land so ceded, in like manner, and with like effect, as if no cession had taken place, saving to the United States security in the possession and enjoyment of said land, and all property within said limits and extent, and exemption of the same, with all improvements and property thereon, from any taxation under the authority of the state so long as the same is held and occupied by the United States for the purposes expressed and intended in this cession, and not otherwise."

The condition expressed in the cession of the governor seems to follow substantially the language of the state statute. Rev. St. arts. 334, 335. And it is contended by counsel for the defendant that the statute and executive cession reserve to the state of Texas concurrent jurisdiction with the United States over offenses committed within the ceded territory. If that position be correct, this court would be without jurisdiction to proceed further, as it can take cognizance of the offense of murder (so far as the clause of the Revised Statute under consideration is concerned) only when it is committed in a place or district under the exclusive jurisdiction of the federal government. But I cannot adopt the view of defendant's counsel, although at first inclined to believe that construction to be the proper one. The state, in the instrument of cession, merely reserves the right to serve process upon persons within the ceded land who may have committed offenses elsewhere, and I do not understand that its purpose is to reserve a concurrent jurisdiction over the territory ceded. In construing a somewhat similar statute, in the case of *U. S.* v. *Cornell*, 2 Mason, 65, Judge STORY uses this language:

"It provides only that civil and criminal processes, issued under the authority of the state, which must of course be for acts done within, and cognizable by, the state, may be executed within the ceded lands, notwithstanding the cession. Not a word is said from which we can infer that it was intended that the state should have a right to punish for acts done within the ceded lands. The whole apparent object is answered by considering the clause as meant to prevent these lands from becoming a sanctuary for fugitives from justice, for acts done within the acknowledged jurisdiction of the state. Now there is nothing incompatible with the exclusive sovereignty or jurisdiction of one state, that it should permit another state, in such cases, to execute its processes within its limits."

And it is said by the supreme court, in the case of *Railroad Co.* v. *Lowe,* 114 U. S. 533, 5 Sup. Ct. Rep. 995, that—

"The reservation which has usually accompanied the consent of the states that civil and criminal process of the state courts may be served in the places purchased, is not considered as interfering in any respect with the supremacy of the United States over them; but is admitted to prevent them from becoming an asylum for fugitives from justice."

I therefore charge you, gentlemen, as matter of law, that the instrument executed by the governor, which is in evidence before you, cedes to the United States exclusive jurisdiction over the lands therein particularly described. But in thus holding I do not mean to say to you that the offense charged against the defendant—if offense it be—was committed within the limits of the boundaries set forth in the instrument. That is a question of fact for you to determine from a consideration of the evidence; and if you find that the homicide was not committed within the boundaries covered by, or included within, the cession, then it would be your duty to aquit the defendant. It devolves upon the government to prove to your satisfaction that the killing was done at a place within the exclusive jurisdiction of the United States; and in this case the burden is upon the government to show that the homicide was committed within the boundaries described in the cession made by the governor. If you are satisfied that Joseph Horan was killed by the defendant at or within a place under the exclusive jurisdiction of the United States, it will next be your duty to inquire into the circumstances of the homicide, in order to determine the question of guilt or innocence of the defendant.

The offense—as I have already stated to you—charged by the indictment is murder, but in your consideration of this case you will not confine your attention solely to that offense. The statutes provide that in all criminal cases the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment, (*U. S.* v. *Carr*, 1 Woods, 485;) and you are instructed that the crime of manslaughter is included in the crime of murder. And, hence, if you should conclude that the defendant is not guilty of murder, you may still find him guilty of manslaughter, if the testimony warrants such finding, or you may find him not guilty of any offense. Let me first direct you attention to the offense specifically charged against the defendant; that is, the crime of murder. Not every homicide is murder, nor is every killing of a human being a crime; and it therefore becomes necessary for the court to instruct you what constitutes the crime of murder as known to the law. By approved authors it is defined thus: "Murder is where a person of sound memory and discretion unlawfully and feloniously kills any human being, in the peace of the sovereign, with malice prepense or aforethought, express or implied." In this case it is admitted by the defendant that he killed the deceased, Joseph Horan, by shooting him with a pistol. It is not denied that the defendant at the time of the killing was of sound memory and discretion, nor that Horan was under the peace and protection of the law. It will therefore be necessary for you to determine whether the killing was

an unlawful one on the part of the defendant, with malice aforethought, express or implied.    Upon the point whether or not the killing was unlawful, you will inquire, first, whether the act of the accused, which resulted in the death of Horan, was intentional or unintentional.    If it was unintentional, if the defendant had no purpose to fire his pistol, but it was discharged by him accidentally, and at the time of its discharge the prisoner was engaged in no unlawful act, and if it was not negligently discharged, as hereinafter considered, then the act of killing was a homicide by misadventure,—as the law terms it,—and is no crime; and under such circumstances it would be your duty to aquit him.

If you should be of opinion that the killing was committed under circumstances which would not authorize you to find the defendant entirely guiltless of any offense, you will next inquire whether it was committed with malice aforethought, express or implied; and to reach a conclusion upon that point you must understand the meaning of the terms used.    It is said by the supreme court of this state that malice aforethought, when attempted to be defined, has been necessarily given a more comprehensive meaning than enmity or ill will or revenge, and has been extended so as to include all those states of the mind under which the killing of a person takes place without any cause, which will in law justify, excuse, or extenuate the homicide.    *McCoy* v. *State*, 25 Tex. 39.    Malice, as applied to the offense of murder, need not denote spite or malevolence, hatred or ill will, to the person killed; nor that the slayer killed his victim in cold blood, as with a settled design and premeditation.    Such a killing would, it is true, be murder; but malice, as essential to the crime of murder, has a more extended meaning.    "A killing flowing from an evil design in general may be of malice, and constitute murder; as a killing resulting from the dictates of a wicked, depraved, and malignant spirit—a heart regardless of social duty, and fatally bent upon mischief—may be of malice, necessarily implied by law from the fact of killing without lawful excuse, and sufficient to constitute the crime of murder, although the person killing may have had no spite or ill-will towards the deceased.    Malice, as thus described, is either express or implied.    Express malice is where one with a sedate and deliberate mind and formed design doth kill another, which formed design is evidenced by external circumstances, discovering that inward intention;    *    *    *    as by lying in wait, antecedent menaces, former grudges, and concerted schemes to do bodily harm."    *Jordan* v. *State*, 10 Tex. 492.    In reference, gentlemen, to malice, it is said by eminent judges that it is rarely, if ever, the case that express malice is proven upon the trial of a cause.    Its existence lies in the heart of the slayer, and he alone knows its secrets.    "He is the only possible direct witness to that; and if he meant so to testify, he would plead guilty.    The existence or non-existence of malice is an inference to be drawn by the jury from all the facts in the case."    It is said that malice may be implied from the fact of killing with a deadly weapon.    But that rule, however correct as an abstract proposition, can seldom, it is said, be of practical utility in ascertaining the species of malice; for that fact is rarely, if ever, presented in a case unaccompanied with other facts and circumstances ex-

plaining the killing; and when other facts appear, the presumption as thus stated is apt to mislead. The rule is aptly expressed by a learned judge in the following language:

"Malice is to be inferred from all the facts in the case. If malice is found, it must be drawn as an inference from everything that is proved taken together and considered as a whole. Every fact, no matter how small; every circumstance, no matter how trivial, which bears upon the question of malice, must be considered by the jury at the same time that they consider the use of the deadly weapon; and it is only as a conclusion from all those facts and circumstances that malice, if inferred at all, is to be inferred." *U. S.* v. *King,* 34 Fed. Rep. 312.

The malice, you observe, must be aforethought. It implies premeditation,—a prior intent to do the act. It may have existed but for a moment, an inappreciably brief period of time, or longer. No limit has been, nor can be, fixed as to its duration. If it in fact existed for any period, however brief, the killing would be murder; and, if malice was wanting, the homicide, whatever it may be, would not be murder.

I will not attempt a review of the facts in this case, for they are fresh in your memory; and if, after a careful consideration of the testimony, you are clearly satisfied that the defendant killed Horan with malice aforethought, as above defined to you, it would be your duty to find him guilty as charged in the indictment. But if you conclude that he is not guilty of murder, you will next look into the offense of manslaughter, and ascertain whether he is guilty of that offense. By the Revised Statutes of the United States, the crime of manslaughter, for the purpose of this case, is defined as follows:

"Every person who, within any fort, arsenal, dock-yard, magazine, or in any other place or district of country under the exclusive jurisdiction of the United States, unlawfully and willfully, but without malice, strikes, stabs, wounds, or shoots at or otherwise injures another, of which striking, stabbing, wounding, shooting, or other injury such other person dies, is guilty of the crime of manslaughter." Rev. St. § 5341.

Manslaughter is said by Mr. Blackstone (4 Bl. Comm. 191) to be the unlawful killing of another without malice, express or implied, which may be voluntary, upon a sudden heat, or involuntary, but in the commission of some unlawful act. Voluntary manslaughter, as defined by the common-law writers, is an intentional killing in hot blood, without malice; and "involuntary manslaughter, according to the old writers, is where death results unintentionally, so far as the defendant is concerned, from an unlawful act on his part, not amounting to felony, or from a lawful act negligently performed." 1 Whart. Crim. Law, (8th Ed.) § 305. But the distinction above adverted to between voluntary and involuntary manslaughter is now obsolete at the common law, and becomes here immaterial. Any unlawful and willful killing of a human being without malice is manslaughter, and, thus defined, it includes a negligent killing, which is also willful. It is insisted by the defendant's counsel that the killing was by misadventure,—a mere accident,—with no formed intent on the part of the defendant to kill Horan. I have told you that to constitute manslaughter the killing must be willful,—

must be willfully done. The word "willfully," says a text writer, "sometimes means little more than plain intentionally, or designedly. Yet it is more frequently understood to extend a little further, and approximate the idea of the milder kind of legal malice; that is, as signifying an evil intent without justifiable excuse." 1 Bish. Crim. Law, § 428. Now, in this case, it is not insisted that there was an altercation between deceased and the defendant, and that the killing was committed in sudden heat. Manslaughter, however, may exist where there is no evidence of sudden heat of passion; as, for example, where the killing results from the negligent use of dangerous agencies, as fire-arms. The rule is thus stated by Mr. Wharton:

"Whoever possesses a dangerous agent must take such care of it as good business men, under such circumstances, are accustomed to apply; and if from his neglecting to exercise such care death ensue to another, he is liable for manslaughter." Whart. Crim. Law, § 343.

But, gentlemen, you must accept this rule with the qualification or explanation that the killing must also be willfully committed, as the word "willfully" is defined in a foregoing part of this charge. You will carefully weigh all the testimony, and determine whether the defendant is guilty of murder or manslaughter, or not guilty of either offense, and render your verdict accordingly.

There is another point to which your attention is directed, and that is intoxication. There is evidence before you tending to show that at the time of the killing defendant was laboring somewhat under the influence of liquor.

You are instructed that intoxication is no excuse for crime, but it may be considered to discover the specific intent which actuates a party in the commission of the offense. and thus it may sometimes reduce the offense of murder to manslaughter; and the rule is thus stated:

"Where the question of a specific intent is essential to the commission of a crime, * * * the fact that an offender was drunk when he did the act which, being coupled with that intention, would constitute the crime, should be taken into account by the jury in deciding whether he had that intention."

But this excuse is to be received with great caution, and the question is left for the jury to determine, "whether the defendant's mental condition was such that he was capable of a specific intent to take life."

Lastly, gentlemen, you are not to presume the defendant guilty. The presumption of law is in favor of the innocence of the accused until his guilt is established to the satisfaction of the jury beyond a reasonable doubt; that is, a doubt based upon reason, and arising out of the testimony. "Reasonable doubt" has been defined, in a case which has passed the scrutiny of the supreme court, as follows:

"A reasonable doubt is a doubt based on reason, and which is reasonable in view of all the evidence; and if, after an impartial comparison and consideration of all the evidence, you can candidly say you are not satisfied of the defendant's guilt, you have a reasonable doubt. But if, after such impartial comparison and consideration of all the evidence, you can truthfully say that you have an abiding conviction of the defendant's guilt, such as you would

be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt."

If, in view of the evidence and charge of the court, you believe defendant guilty of murder, you will find him guilty as charged in the indictment. If, however, you find that he is guilty of manslaughter, your verdict will be: "We the jury find the defendant not guilty of murder, but guilty of manslaughter." But if you find that he is not guilty of either offense, murder or manslaughter, you will simply find him not guilty.

Verdict or guilty of manslaughter.