## LEE v. UNITED STATES.

### No. 7454.

United States Court of Appeals for the District of Columbia.

Decided April 29, 1940.

---

6 Wigmore, Evidence, 2d Ed. & 1934 Supp., § 2527 and authorities cited.

Perry W. Howard and James A. Cobb, both of Washington, D. C., for appellant.

David A. Pine, U. S. Atty., and Howard Boyd and William S. Tarver, Asst. U. S. Attys., all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

Appellant was convicted in the lower court of murder in the second degree. This appeal is from the judgment which followed conviction. A number of assignments of error were made but on appeal they were consolidated into three contentions, each of which involves the question whether appellant could properly be convicted of second degree murder, in the light of the facts and the applicable law. Careful consideration of both results in the conclusion that the conviction and judgment were proper.

On the evening of September 2, 1938, appellant and another person were driving along Nichols Avenue, Southeast, in the City of Washington, D. C., in a Ford automobile, at approximately twenty-two miles per hour, carrying a load of untax-paid whiskey. Two investigators of the Alcohol Tax Unit followed in a government car for approximately half a mile; when the occupants of the Ford discovered the government car they accelerated their speed to approximately forty miles per hour. The investigators then opened their electric siren and pulled abreast of the Ford; one investigator then yelled to appellant and his companion that he was an officer and commanded that the Ford be stopped. Instead the Ford was quickly accelerated to higher speed; it outran the government car and while being driven at a speed of seventy to eighty miles per hour ran down grade through a busy intersection at Sheridan Road, where it struck an Auburn Sedan and killed a child who was riding therein.

The speed of appellant's car and the force of the impact can be judged by the following evidence. One witness testified "that said Ford Coach was traveling at a rate of speed varying between seventy-five and eighty miles per hour; that as he looked up he observed a car, afterwards ascertained to be an Auburn, in the intersection of Sheridan Road and Nichols Avenue; that the Ford struck the rear end of the Auburn and several persons were thrown out of the doors and through the roof of the Auburn 'like pebbles being tossed into the air'; * * *." The driver of the Auburn car testified "that the street was heavily travelled at that hour; that it was dusk and that some cars were traveling with the use of headlights. * * * that while waiting for the traffic in front of him to clear so as to permit the completion of his turn his attention was attracted by the terrific noise of a car approaching Sheridan Road, being driven in a northerly direction down Nichols Avenue Hill; that the

car was, in the opinion of the witness, being driven at approximately eighty miles an hour; that the approaching car * * * attempted to swing to the rear of the witness' car; that when it was about thirty feet away, it screeched, skidded and vibrated, and plunged from the ground as though the brakes were being applied, but, because of its terrific speed it was unable either to stop or pass by * * * and struck the witness' car in the rear. * * * that the next thing he could remember after the impact was that he was lying in the street about ten feet from his car; * * * that as a result of the collision his car had been knocked half across the intersection." Appellant's companion in the Ford, who was also a defendant in the lower court, testified that when appellant fled from the pursuing car he "became frightened and attempted to get on the floor of the car; that from such a point he was unable to approximate the speed at which Lee was driving but that the engine of Lee's car was *roaring.*" [Italics supplied]

Appellant testified voluntarily in his own behalf that he went to Maryland to secure a load of untax-paid liquor; upon securing it he threw a cover over the cans of whiskey; started back to Washington; on being overtaken by the officers he thought they were "hi-jackers" and "fearing for his personal safety and that of the liquor" he fled at a rate of forty-five miles an hour; "that when he got within thirty or forty feet of the Auburn which was stopped horizontally to Nichols Avenue in the intersection at Sheridan Road he applied the brakes and did everything in his power to stop; that his efforts were unavailing and he collided with the said Auburn." He offered nothing more by way of explanation, excuse or extenuation. No witness who testified as to the approximate speed of appellant's car, except appellant himself, placed the speed at the time of the collision at less than seventy miles an hour.

The District of Columbia Code defines the offense, of which appellant was convicted, as follows: "Whoever with malice aforethought, except as provided in sections 21 and 22 of this title, kills another is guilty of murder in the second degree." [1] Section 22 relates to homicides caused by the placing of obstructions upon railroad tracks or by otherwise endangering the passage of locomotives or cars. Section 21 provides that: "Whoever, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate any offense punishable by imprisonment in the penitentiary, kills another, is guilty of murder in the first degree."

In interpreting these sections this court has held that a deliberate intent to take life, together with malice, are essential elements of murder in the first degree. [2] On the other hand, an accidental or unintentional killing [3] will constitute murder in the second degree if it is accompanied by malice. [4] In the present case the killing was clearly proven and frankly admitted. Therefore, the only question is whether it was accompanied by malice upon the part of appellant, either express or implied. [5] The

---

[1] D.C.Code (1929) tit. 6, § 23.

[2] In Sabens v. United States, 40 App. D.C. 440, 442, this court said: "To constitute murder in the first degree the act must have been committed wilfully, deliberately, maliciously, and premeditatedly; and these concomitants are presumed to have been present when poison was intentionally administered, or when the killing resulted from the perpetration, or attempted perpetration, of any offense punishable by imprisonment in the penitentiary, or when death ensued from the placing of an obstruction on a railroad with the above-mentioned intent. In other words, a deliberate intent to take life is declared to be an essential element of murder in the first degree, and this, of course, must be shown as a fact. While implied malice at common law was sufficient to make an offense murder, under our statute, which requires proof of actu-

al malice, implied malice constitutes murder in the second degree." And this statement was quoted with approval in Marcus v. United States, 66 App.D.C. 298, 305, 86 F.2d 854, 861. See Jordon v. United States, 66 App.D.C. 309, 311, 87 F.2d 64, 66, certiorari denied, 303 U.S. 654, 58 S.Ct. 762, 82 L.Ed. 1114.

[3] Marcus v. United States, 66 App.D.C. 298, 304, 86 F.2d 854, 860.

[4] Marcus v. United States, supra note 3; Sabens v. United States, 40 App.D. C. 440, 442; Norman v. United States, 20 App.D.C. 494, 499. See Bishop v. United States, 71 App.D.C. 132, 107 F. 2d 297, 301. See also, 1 Warren, Homicide (1938) § 68.

[5] Bishop v. United States, supra note 4. For a critique of the judicial distinction between "express" and "implied" malice see Perkins, A Re-Examination of Malice Aforethought, 43 Yale L.J. 537,

court charged the jury, in substance, that such malice existed if the homicide resulted from the commission by appellant of an offense punishable by imprisonment in the penitentiary. Appellant was engaged in the illegal transportation of untax-paid liquor, an offense punishable by imprisonment in the penitentiary, [6] and the killing resulted directly therefrom.

■■ Whether the charge given by the court would be proper in all cases in which a homicide occurs in the perpetration of an offense punishable by imprisonment in the penitentiary we need not now decide. It is settled in the District of Columbia that malice exists, sufficient to support a conviction for murder, where the killing results from the commission of a penitentiary offense, which is reasonably calculated to cause death or inflict serious bodily injury. [7] Under the circumstances, it is not necessary to consider cases decided in other jurisdictions which interpret and apply statutes in which the presence or absence of implied malice is made to depend upon the commission of homicides while engaged in the commission of *felonies* or to consider cases which apply directly the closely related common law concept of implied malice. [8] It is true that, generally speaking, the code sections constitute a restatement of the common law definition of murder; [9] but as they have substituted, for the more or less indefinite common law concept of *felony,* the precise concept of offenses punishable by imprisonment in the penitentiary, it is the latter language which controls and which has been interpreted by this court in the cases to which reference has been made.

■ The circumstances of the present case were clearly sufficient to show malice and to support the charge as given. The summary of evidence heretofore set out demonstrates the fact—which is only too well known—that one who engages in the unlawful transportation of liquor, must contemplate the probability of running battles with police officers and hi-jackers along the public highways; just as one who engages in such crimes as robbery, or rape, or arson, or larceny, must contemplate the probability of resistence from his victims. The risks taken by such criminals are notoriously dangerous not only to the participants therein, but to innocent victims who may be in the vicinity. That appellant is a veteran of such wars is revealed by his own testimony, on cross-examination, that "in 1930 he had been convicted of operating an automobile equipped with a smoke-screen and sentenced to [the] penitentiary; that in 1932 he had been convicted of the same offense and sentenced to the penitentiary; that also in 1930 he had been convicted of reckless driving and sentenced to jail; that in 1935 he had been convicted of a charge of transporting liquor in violation of the Internal Revenue Laws and sentenced to jail." It would be highly unrealistic to class this offense with mere violation of speed laws or other non-violent offenses ordinarily spoken of as malum prohibitum. It would be no more incongruous to urge that because the commission of robbery, rape, or arson, does not always result in death, those offenses do not come within the language of the pertinent statute, or within the common law concept of implied malice.

■ Appellant urges that the proximate cause of death in the present case was "the misdemeanor of reckless driving." This is not a valid contention. The evidence shows clearly that appellant's car was loaded with contraband liquor and was sufficient to establish the fact that the reason for his reckless behavior was to save his cargo and

546. See also, 1 Wharton, Criminal Law (1932) § 145.

■ [6] 48 Stat. 316, 317, 26 U.S.C.A. Int.Rev.Code. § 2803(a, g), provides that the felony be punished by fine or by imprisonment not exceeding five years. Imprisonment for more than one year is required to be in the penitentiary. D. C.Code (1929) tit. 6, § 401. The words in the homicide statute "punishable by imprisonment in the penitentiary" do not mean an offense which must be so punished, but one which may be so punished. United States v. Evans, 28 App.D.C. 264.

[7] Norman v. United States, 20 App.D.

C. 494, 499; Marcus v. United States, 66 App.D.C. 298, 305, 86 F.2d 854, 861.

[8] See generally, and for a suggested qualification of the common law rule, Perkins, A Re-Examination of Malice Aforethought, 43 Yale L.J. 537, 563: ". . . homicide is murder (if no statute in the particular jurisdiction requires a different answer) provided the death ensues in consequence of some other felony which involves a substantial element of human risk, or is caused by a dangerous act committed in furtherance of such felonious design."

[9] Bishop v. United States, 71 App.D.C. 132, 107 F.2d 297, 301.

complete the transportation. Obviously, this reason speaks in terms of the offense of illegal transportation, not of reckless driving. His own explanation was that he was trying to escape a hi-jacker. This explanation also is concerned with illegal transportation rather than with reckless driving and even an attempt to escape a hi-jacker would have constituted no excuse for the killing of innocent third persons.[10] It could as well be urged that one who killed another while committing a robbery should not be held guilty of murder because the proximate cause of death was the misdemeanor of firing a gun within the city limits.

Appellant contends further that evidence of transportation of liquor should have been excluded because it related to a separate and different offense than that of which he was charged. But the evidence was clearly admissible. The very language of the statute defining murder reveals its purpose and brings it within the exception to the rule.[11]

We have carefully considered all of appellant's other contentions and find them to be without merit.

Affirmed.

[10] Upon this point the court properly instructed as follows: "If one intentionally and wrongfully does an act so dangerous and serious that it reasonably might be expected to cause death, and the act does result in death, then the party who kills may be convicted of second degree murder. In such a case there is involved the wanton and reckless disregard of the rights of another." Cf. State v. Nargashian, 26 R.I. 299, 58 A. 953, 106 Am.St.Rep. 715, 3 Ann.Cas. 1026; State v. Capaci, 179 La. 462, 499, 154 So. 419, 430; People v. Martin, 13 Cal.App. 96, 108 P. 1034. Cf. also, People v. Weeks, 104 Cal.App. 708, 712, 286 P. 514, 515.

[11] Witters v. United States, 70 App. D.C. 316, 318, 106 F.2d 837, 839, 125 A.L.R. 1031: "The general rule is that evidence is inadmissible which tends to prove that the accused committed a crime other than the one charged in the indictment. But this rule is subject to certain well-established exceptions 'to the end that all relevant facts and circumstances tending to establish any of the constituent elements of the crime' for which the accused is on trial may be made to appear." See State v. Werner, 144 La. 380, 387, 80 So. 596, 599, 6 A.L.R. 1601; People v. Olsen, 80 Cal. 122, 126, 22 P. 125, 126; Commonwealth v. Chmielewski, 243 Pa. 171, 179, 89 A. 964, 966; People v. Blake, 157 Mich. 533, 536, 122 N.W. 113, 114; 2 Warren, Homicide (1938) § 213.