**UNITED STATES of America,**
**Appellee,**

v.

**William M. DIXON, Appellant.**

No. 22324.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 9, 1969.

Decided March 27, 1969.

---

14. Compare Powell v. Texas, 392 U.S. 514, 536–537, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968).

---

Mr. Milton Kramer, Washington, D. C. (appointed by this court) for appellant.

Mr. Charles M. Rosenberg, Attorney, Department of Justice, of the bar of the Supreme Court of Ohio, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before WRIGHT, TAMM and LEVEN-THAL, Crcuit Judges.

PER CURIAM:

Appellant was convicted, in a trial by jury, of manslaughter (22 D.C.Code § 2405 (1967)) and carrying a dangerous weapon without a license (22 D.C.Code § 3204 (1967)). In this appeal he challenged the validity only of the manslaughter conviction. Since we find no reversible error in the proceedings below, his conviction must be affirmed.

An argument developed between two of appellant's friends during a social gathering at his (appellant's) home. After both parties to the altercation produced and were brandishing knives, appellant, in an attempt to quell the disagreement, went into a bedroom and returned with a revolver and ordered his friends out of his home (Tr. 19–20). The friends adjourned to the street but continued their quarrel there. Appellant followed the assailants into the street and, in a second attempt to halt the fracas, told them that he would shoot between them if either attempted to advance on the other (Tr. 22, 32–34, 36). At that point one of the two individuals involved in the argument (Mr. Johnson) shouted at appellant that "you don't have a damn thing to do with this" (Tr. 72,

132–33), whereupon appellant jumped off the steps in front of his home and pushed Mr. Johnson in the chest. Simultaneously, a shot was fired from the gun appellant still held in his hand. The bullet hit Mr. Johnson in the neck causing his death.

At trial, appellant's sole defense was "accidental shooting" (Tr. 137). The prosecution's theory was that the shooting was intentional and it sought to convict appellant of murder in the second degree. The trial judge charged the jury on all the essential elements of second-degree murder (Tr. 160–61) and of the lesser included offense of manslaughter (Tr. 162–63). In addition, he also charged the jury on accidental death (Tr. 166). Subsequently, during their deliberation the jury sent a note to the court requesting additional instructions on manslaughter and accidental death. The trial judge then repeated his manslaughter charge, mentioning lack of malice but leaving out the specific mention of adequate provocation or sudden heat of passion that he had included in his earlier charge. The judge also repeated his earlier charge on the circumstances necessary to find accidental killing. The court then queried the jury: "Does that answer your question?" After an affirmative response he continued on to say: "Does either counsel have anything to add?" (Tr. 169.) Following a negative response to this question the jury retired and later brought back a verdict of guilty of manslaughter and carrying a dangerous weapon.

On appeal appellant advances a two-pronged argument for reversal of his manslaughter conviction. Initially, he argues that the evidence, as a matter of law, does not establish the elements necessary for a manslaughter conviction. In other words, appellant claims that the jury should have been allowed a choice only between guilty or not guilty of second-degree murder. We do not agree. We feel that the inebriant atmosphere, the heated arguments, and the bantering back and forth clearly established sufficient evidence for a jury to be able

to find appellant guilty of manslaughter. Fryer v. United States, 93 U.S.App.D.C. 34, 207 F.2d 134, cert. denied, 346 U.S. 885, 74 S.Ct. 135, 98 L.Ed. 389 (1953); Bishop v. United States, 71 U.S.App.D.C. 132, 107 F.2d 297 (1939).

■■ Secondly, appellant argues that the trial judge erred by not including all the elements of manslaughter in his second instruction. We find this argument unpersuasive. It has been held that appellant faces a heavy burden in objecting to instructions on appeal that he has acquiesced in at trial. Villaroman v. United States, 87 U.S.App.D.C. 240, 184 F.2d 261, 21 A.L.R.2d 1074 (1950); Kelly v. United States, 124 U.S.App.D.C. 44, 361 F.2d 61 (1966); FED.R.CRIM.P. 30. In any event, we find no reversible error in the instructions given since the heat of passion and adequate provocation were stressed in the earlier instruction and since the defense counsel was given specific opportunity to suggest any additions which he thought might be helpful. Thus, it seems clear that the jury was fully cognizant of the fact that, based upon all the evidence and the instructions from the court, it had three separate choices, (1) accidental killing, (2) second-degree murder, or (3) manslaughter. We find no rational basis upon which to disturb their choice. Appellant's conviction therefore must be

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (concurring):

I concur in the court's opinion. Judge Leventhal's concurring opinion focuses on an area of the law which needs attention. I agree with him that a manslaughter verdict may be based on recklessness, and that in an appropriate case such a charge should be given.

LEVENTHAL, Circuit Judge (concurring):

I concur in the court's opinion since I think the facts can be stretched to fit the framework of provocation or excessive response (without malice), the traditional mold of manslaughter instructions and verdicts in the District of Columbia.

I am impelled, however, to make a few observations about the facts of the case, and why they indicate culpable homicide, which focus on an approach neither invoked by the prosecutor nor reflected in the instructions to the jury.

The capable and experienced trial judge instructed the jury that for a second degree murder verdict it must find that "malice" has been established beyond a reasonable doubt. And he defined the term "malice," using expressions from our decided cases in about the same words as are contained in Instruction 83 prepared by the Junior Bar Section. He charged the jury (Tr. 160–162):

Now as to the essential ingredients of malice, let me define it for you. In its ordinary use in every day life the word malice would indicate a feeling of hatred or ill will toward another or feeling of hostility toward an individual. In its legal sense malice has a broader significance. It is a state of mind showing a heart regardless of social duty, a mind deliberately bent on mischief. Malice as the law knows it may also be defined as a condition of mind to prompt a man to do a wrongful act wilfully, that is on purpose, as distinguished from accidentally, to the injury of another or the intentional doing of a wrongful act on another without justification or excuse. Malice may be either express or implied. Express malice is where one unlawfully kills another in pursuance of wrongful and unlawful purpose without legal excuse. Implied malice is such as may be inferred from the circumstances of the killing, as for example, where the killing is caused by the intentional use of fatal force without circumstances serving to mitigate or justify the act, or when an act [which] imports danger to another is done so recklessly or wantonly as to manifest depravity of mind in this and disregard of human life.

In determining whether a wrongful act is intentionally done and is therefore done in malice aforethought, you should bear in mind that intent may be deduced from circumstances, from things said and from things done. The instrument or means by which a homicide has been accomplished is always to be taken into consideration in determining whether the act is criminal and in what degree it may be so. If in a prosecution for homicide it is shown that the accused used a deadly weapon in the commission of the act, the jury may infer, but it is not required to infer, malice from the use of the weapon.

As to manslaughter, the judge said that if the Government proved beyond a reasonable doubt that decedent died of a wound inflicted by defendant but failed to prove malice, the jury may consider manslaughter. And he said (Tr. 162–163):

Now manslaughter is the unlawful killing of a human being without malice aforethought. It occurs if homicide is committed at the time of mutual combat or may occur in passion or hot blood caused by adequate provocation. In other words, in order to reduce the offense from murder to manslaughter, there must be shown ample provocation and sudden passion and both of these things must exist at the time the act is done.

The elements which the government must prove beyond a reasonable doubt in the event you reach the lesser included offense of manslaughter, and in order for you to find the defendant guilty of manslaughter are: 1, that this defendant shot the decedent; 2, that the decedent died of the wounds inflicted; 3, that the defendant shot the decedent in sudden passion and without malice; and 4, that the homicide was without legal justification or excuse and not accidental.

Here again the instruction used the same language as part of the instruction prepared by the Junior Bar Section (# 88). Though it omitted part of No. 88, there is no material variance; they are in essence the same instruction.

And so we see that the use of standard instructions put before the jury the possibility of a murder verdict based on recklessness, even in the absence of an intent to kill. But there was no instruction whereby a manslaughter verdict might be rested on recklessness, or any other element indicative of culpable negligence. Instead manslaughter was equated with shooting in the heat of passion.

■ I respectfully submit that the customary instructions stand the law of criminal homicide on its head when they use recklessness as the basis of verdict only in the instruction on second degree murder, and omit an instruction for a manslaughter verdict based on criminal negligence.

The matter comes to the fore in the present case because the facts are such that although it is possible that defendant is culpable because he shot his gun in the heat of passion (anger), it seems to me equally if not more likely that he fired the gun between the assailants, intending to separate them. Such a firing might well be deemed by the jury to lack the element—set forth in the malice instruction—of an act "done so recklessly or wantonly as to manifest depravity of mind and disregard of human life." Yet it might very well exemplify the kind of recklessness that calls for a manslaughter instruction, even though there was no heat of passion.

It is time, I suggest, to set matters straight. I see no point in re-traversing the page of history, as distinguished from logic, whereby there has been culled from our appellate opinions the standard instructions now in use.

Instead I propose to set forth what I believe to be the pertinent elements of criminal homicide based on culpable recklessness.

1. There is a basis for a verdict of murder at common law, and also as

to second degree murder under our Code, when a defendant's act is so reckless as to indicate a disregard of human life. Thus there is an objective element in "malice" and second degree murder.[1]

(Parenthetically I interject to say it is unfortunate that this part of the definition of "malice" is proposed by the Junior Bar Section even when the judge is defining "malice" as part of the first degree murder charge. Since "premeditated" and "deliberated" murder requires a subjective intent to kill, and indeed reflection on that intent, it may be mischievous and confusing to interlace into an instruction on first degree murder verbiage cast in terms of recklessness. I think a defendant on trial for first degree murder would be entitled to ask that this reference to recklessness be omitted.)

2. In my view a manslaughter verdict may be predicated on recklessness. Our statute contains no definition of manslaughter, except as a definition of sorts may be implied from the fact that the Code's reference to manslaughter omits the term "with malice aforethought" contained in the definition of murder.[2] That is about where this court left the matter in its oft-repeated statement that manslaughter is "the unlawful killing of a human being *without malice.*" *E. g.* Fryer v. United States, 93 U.S. App.D.C. 34, 38, 207 F.2d 134, 138, cert. denied, 346 U.S. 885, 74 S.Ct. 135, 98 L.Ed. 389 (1953).[3]

Yet it was settled at common law, and, I think, is true under our statute that reckless conduct resulting in death may constitute manslaughter.[4] The dif-

1. Austin v. United States, 127 U.S.App. D.C. 180, 184, 382 F.2d 129, 133 (1967); Lee v. United States, 72 App.D.C. 147, 150–151, 112 F.2d 46, 49–50 (1940).

2. 22 D.C.Code § 2403 provides:
   Whoever with malice aforethought * * * kills another, is guilty of murder in the second degree.
   Whoever commits manslaughter shall be punished by a fine not exceeding one thousand dollars, or by imprisonment not exceeding fifteen years, or by both such fine and imprisonment. 22 D.C. Code § 2405 (1967).

3. *See also* Bishop v. United States, 71 U.S.App.D.C. 132, 107 F.2d 297 (1939); Criminal Jury Instructions for the District of Columbia § 88, at 69 (1966). The same language is used by other courts, *see, e. g.,* Beardslee v. United States, 387 F.2d 280 (8th Cir. 1967).

4. As to the common law *see* Perkins, The Criminal Law 61 (1957), noting that conduct "involving an unreasonable risk of death or great bodily injury to others * * * being extreme in degree * * *" is manslaughter, but becomes murder if the actor has "an awareness of such risk together with a wanton and wilful disregard of consequences." *See also* Michael & Wechsler, A Rationale of the Law of Homicide, 37 Colum.L.Rev. 701, 717 (1937). For a general discussion of principles of recklessness and negligence *see*

G. Williams, Criminal Law, The General Part §§ 36–43, at 100–124 (1961); Wechsler, Codification of the Criminal Law in the United States: The Model Penal Code, 68 Colum.L.Rev. 1425, 1439 (1968).

That the Congressional reference to "manslaughter" in the D.C.Code incorporate this common law conception of recklessness is supported by the construction that has been given to the otherwise undescribed term as used in Rev.Stat. § 5341. That Section provided: "Every person who [within certain places e. g. forts, arsenals, on the high seas] unlawfully and willfully, but without malice, strikes, stabs, wounds, or shoots at, or otherwise injures another, of which striking, stabbing, wounding, shooting, or other injury such other person dies * * * is guilty of the crime of manslaughter." In United States v. Meagher, 37 F. 875 (C.C.W.D.Tex.1888), the judge gave an instruction, based on the common law of manslaughter as found in *Wharton,* and charged (p. 881): "Manslaughter, however, may exist where there is no evidence of sudden heat of passion; as, for example, where the killing results from the negligent use of dangerous agencies, as firearms."

Congressional reference to manslaughter as incorporating recklessness is supported not only by the understanding contemporaneous with the 1878 Revised Stat-

ference between that recklessness which displays depravity and such extreme and wanton disregard for human life as to constitute "malice" and that recklessness that amounts only to manslaughter lies in the quality of awareness of the risk.[5]

In putting this basis of culpability to a jury, care must of course be taken that a verdict is not based on simple negligence. As Professor Wechsler points out:

> The ultimate issue is conceived to be whether the actor's failure to perceive the risk "involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." Much more

than the "ordinary negligence" of tort law is thus deemed to be involved.[6]

This problem concerning the instruction to the jury can be handled by avoiding the use in manslaughter instruction of the term "negligence." This would confine "negligent homicide" to the instance expressly provided for by our Code, the misdemeanor of vehicular homicide.[7]

The consequent gradation for felonious homicide determined by reference to an objective standard is: (1) Murder, for implied malice, where there has been wanton disregard as to taking of life.[8] (2) Manslaughter, where there

---

utes, but also by contemporary understanding, as appears from 18 U.S.C. § 1112 (derived from R.S. § 5341) as enacted in 1948: "(a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:
> Voluntary—Upon a sudden quarrel or heat of passion.
> Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, *or without due caution and circumspection*, of a lawful act which might produce death." (Emphasis added.)
That the federal statute is properly applied in accordance with the common law "fundamentals of involuntary manslaughter," *see* United States v. Pardee, 368 F.2d 368, 374 (4th Cir. 1966).

5. *See* Perkins, *supra* note 4. *See also* Wechsler *supra* note 4. Professor Wechsler's discussion is penetrating and lucid. Although I use slightly different terminology, I concur in the soundness of his basic approach.

6. *See* Wechsler, *supra* note 4, at 1438:
> Negligence is distinguished from acting purposefully, knowingly, or recklessly in that it does not involve a state of awareness. It is the case where the actor inadvertently creates a substantial and unjustifiable risk of which he ought to be aware, given its nature and degree, the character and purpose of his conduct, and the circumstances known to him.
> In United States v. Pardee, *supra* note 4, the court, approving the language in State of Maryland v. Chapman, 101 F. Supp. 335, 340, 341 (D.Md.1951), chose to address itself to the problem by stat-

ing that manslaughter is not made out by proof of "ordinary simple negligence that would constitute civil liability," and that "the amount or degree or character of the negligence to be proven in a criminal case is *gross* negligence." (368 F.2d at 374). As appears below it is my thought that the matter can better be handled by avoiding the use of "negligence" entirely in manslaughter instructions and using the standard indicated below (note 9 and text thereto).
> In *Pardee* the court added a component to "gross negligence" by saying: " 'Gross negligence' is to be defined as exacting proof of a wanton or reckless disregard for human life." *Id.* at 374. That avoids the problem of too broad a concept of gross negligence, but raises another problem in that it defines gross negligence in the same words customarily used for the objective standard of the "malice" that is involved in definition of murder.

7. "D.C.Code § 40–606: *Negligent homicide.* Any person who, by the operation of any vehicle at an immoderate rate of speed or in a careless, reckless, or negligent manner, but not wilfully or wantonly, shall cause the death of another, shall be guilty of a misdemeanor * * *." This misdemeanor is conclusively deemed included within every charge of manslaughter committed in the operation of a vehicle. 40 D.C.Code § 607.

8. A determination of "wanton disregard of human life" implies the defendant's awareness of a serious danger to life. The defendant would be entitled to an express instruction that the jury must find he had awareness of such danger. But the judge should also then charge that this awareness may be found even though defend-

has been recklessness in conduct involving extreme danger of death or serious bodily injury and gross deviation from the standard of conduct that a reasonable man would observe.[9]

ant had not actually formulated an intent to kill, that it may be inferred from the very fact that the conduct was extremely dangerous to life and from a presumption that one is aware of the probable consequences of his conduct.

The requirement of "awareness" of risk imports a subjective element even to this wanton recklessness aspect of murder, but of course not a subjective intention to kill.

9. The reckless conduct constituting manslaughter embraces extreme danger to life (whether or not there was the awareness of risk requisite for murder), and also extreme danger of serious bodily injury. It would not be as broad as the concept of "negligence," reserved for the statutory misdemeanor of "negligent homicide" (*see* note 7). It is suggested that the term "wanton" be reserved for murder, where it is used in the phrase "wanton disregard of human life"—in order to avoid, as much as feasible, use of the same words for different crimes and degrees of crime.